# IN RE ALBA P.-V. ET AL.*
## (AC 33784)

Lavine, Robinson and Bear, Js.

Argued March 7—officially released May 7, 2012**

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

\** May 7, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Christina D. Ghio*, for the appellant (respondent mother).

*Michael J. LaMonica*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Brendon P. Levesque*, with whom, on the brief, were *Dana M. Hrelic* and *Michael S. Taylor*, for the minor children.

*Opinion*

BEAR, J. The respondent mother appeals from the judgments of the trial court adjudicating two of her children neglected and ordering a six month period of protective supervision.[1] On appeal, the respondent[2] claims that: (1) the court erred when it concluded that

---

[1] Pursuant to General Statutes § 17a-93 (i), protective supervision "means a status created by court order following adjudication of neglect whereby a child's place of abode is not changed but assistance directed at correcting the neglect is provided at the request of the court through the Department of Children and Families or such other social agency as the court may specify . . . ."

[2] On December 15, 2010, a default was entered against the children's father. He is not a party to the present matter. Furthermore, the record indicates that the father has not had contact with the family since 2008. Accordingly, we refer in this opinion to the respondent mother as the respondent.

there was a substantiation of sexual abuse of her daughter, (2) the court improperly found the children neglected based only on a prior substantiation of abuse and on her daughter's recent pregnancy, (3) the court's construction of General Statutes § 46b-120 (8) infringed on her constitutional right to family integrity and (4) as applied, § 46b-120 (8) is unconstitutionally vague. We do not address the respondent's claims because we dismiss the appeal as moot.

The following facts and procedural history are relevant to our disposition of this appeal. The respondent's minor children, Alba and Guadalupe, were adjudicated neglected in 2008 upon the respondent's nolo contendere plea. Pursuant to the 2008 adjudications, a period of protective supervision was ordered. The respondent did not appeal from the adjudications of neglect or the dispositional orders. In September, 2009, the period of protective supervision expired.

On September 1, 2010, the department of children and families (department) opened an investigation after a school administrator reported that Alba, who at the time of the report was thirteen years old, was pregnant. On November 8, 2010, the petitioner, the commissioner of children and families, filed a petition for an adjudication of neglect with respect to both children, alleging that they had been denied proper care and attention, were living under conditions injurious to their well-being, had been abused and suffered from conditions resulting from that abuse. In support of her petition, the commissioner alleged, inter alia, that there was a substantiated case of sexual abuse of Alba and Guadalupe in 2008 by their father and that he did not provide for them financially. With regard to the respondent, the commissioner alleged that there was a substantiated case of physical neglect of the children stemming from the 2008 incident of sexual abuse by their father, one unsubstantiated case of physical neglect of Alba from

2010, and a 2010 substantiated case of physical neglect of both children due to Alba's pregnancy.

On June 8, 2011, the court adjudicated Alba and Guadalupe as neglected based on its finding, pursuant to § 46b-120 (8), that they were denied proper care and attention. The court also entered an order of protective supervision for a period of six months. This appeal followed.

On December 28, 2011, while this appeal was pending, the period of protective supervision expired. Thereafter, the petitioner filed a motion to dismiss the appeal on the ground that the appeal was moot. On January 11, 2012, this court denied the motion "without prejudice to the [petitioner] briefing the mootness claim in [a] brief in addition to the merits of the appeal."

Mootness is an exception to the general rule that jurisdiction, once acquired, is not lost by the occurrence of subsequent events. See *In re Shonna K.,* 77 Conn. App. 246, 258, 822 A.2d 1009 (2003). Because mootness goes to the power of this court to entertain an appeal, we address the issue as a threshold matter. See *Kennedy* v. *Kennedy,* 109 Conn. App. 591, 598–99, 952 A.2d 115 (2008).

The respondent concedes that the period of protective supervision of the children by the department has expired, and, as a result, no practical relief could flow from reversal of the court's dispositional imposition of protective supervision. Nonetheless, she argues that review is proper under either of two exceptions to the mootness doctrine: collateral consequences and the capable of repetition yet evading review doctrine. The petitioner argues that the expiration of the period of protective supervision renders this appeal moot and that the exceptions do not apply. We agree with the petitioner.

We first address the respondent's claim that her appeal is saved by the collateral consequences exception. "[D]espite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur." (Internal quotation marks omitted.) *Williams* v. *Ragaglia*, 261 Conn. 219, 226, 802 A.2d 778 (2002).

The respondent argues that her family's history with the department makes it reasonably foreseeable that it will come under the department's scrutiny in the future. She argues that if any future involvement does occur, the department or the court "will undoubtedly consider any prior substantiations and adjudications."

Our Supreme Court has considered the relevance of past interaction with the department when determining the reasonable possibility of future interaction with the department resulting in collateral consequences to a litigant. *Williams* v. *Ragaglia*, supra, 261 Conn. 228–29 (foster caregiver's likelihood of future involvement with department based on previously accepting care of foster children).[3] Even if we assume that the respondent's history with the department creates a reasonable possibility that she or her family will have future interactions with the department, the respondent has not demonstrated that there is a reasonable possibility that the

[3] Although we agree that *Williams* provides somewhat of an analogy for the respondent's position that it is reasonably possible that she or her family will again come under the scrutiny of the department, we note an important distinction between that case and the present case. Unlike *Williams*, which involved the department's revocation of a foster care license that it had issued to the plaintiff foster caregiver; see *Williams* v. *Ragaglia*, supra, 261 Conn. 219; the adjudications that are the subject of the present appeal do not directly implicate the respondent but, rather, are directed at the status of her children. See *In re Claudia F.*, 93 Conn. App. 343, 347–48, 888 A.2d 1138 (revocation of foster care license "directly implicates holder of the license, whereas . . . a finding of neglect is not directed against the parents"), cert. denied, 277 Conn. 924, 895 A.2d 796 (2006).

adjudications of neglect that are the subject of this appeal will result in prejudicial collateral consequences to her.[4]

The respondent argues that the present adjudications may form the basis of a subsequent coterminous petition[5] to terminate her parental rights. While acknowledging that the 2008 neglect adjudications could form the basis of a termination petition, the respondent argues that this "does not lessen the potential that [the department] and the [c]ourt would rely on this more recent adjudication." The respondent contends that the present neglect adjudications, if left unchallenged, would burden her with multiple adjudications and "likely have significant impact in subsequent proceedings beyond the impact of the 2008 order of temporary custody and adjudication alone." We are not persuaded.

General Statutes § 17a-112 (j) (3) (B) (i) provides that a court may terminate the parental rights to a child that "has been found by the Superior Court or the Probate

---

[4] Recently in *In re Zamora S.*, 123 Conn. App. 103, 108–109, 998 A.2d 1279 (2010), this court stated that "[a]n adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although [General Statutes] § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [i]t is not directed against them as parents, but rather is a finding that the children are neglected . . . ." (Internal quotation marks omitted.)

[5] Practice Book § 35a-3 provides: "When coterminous petitions are filed, the judicial authority first determines by a fair preponderance of the evidence whether the child or youth is neglected, uncared for or dependent; if so, then the judicial authority determines whether statutory grounds exist to terminate parental rights by clear and convincing evidence; if so, then the judicial authority determines whether termination of parental rights is in the best interests of the child or youth by clear and convincing evidence. If the judicial authority determines that termination grounds do not exist or termination of parental rights is not in the best interests of the child or youth, then the judicial authority may consider by a fair preponderance of the evidence any of the dispositional alternatives available under the neglect, uncared for or dependent petition."

Court to have been neglected or uncared for in a prior proceeding . . . ."[6] Thus, the statute requires only a single prior adjudication of neglect as to the child who is the subject of a termination of parental rights petition.

The respondent concedes that the 2008 adjudications can serve as the basis for a termination proceeding alleging her failure to achieve sufficient personal rehabilitation under § 17a-112 (j) (3) (B) (i). Accordingly, review of the present adjudications would provide the respondent with no practical relief from this claimed collateral consequence; Alba and Guadalupe still would be exposed to a subsequent termination of parental rights proceeding predicated on the 2008 adjudications. Whether the court would rely on the more recent adjudications or whether the present adjudications would have significant impact on a subsequent proceeding requires us to speculate as to what weight, if any, a court would assign to the present adjudications. Here, unlike *Williams*, the respondent did not have a "clean"

---

[6] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and the parent . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." There are other adjudicative grounds for termination of parental rights that do not require a prior adjudication of neglect. See, e.g., General Statutes § 17a-112 (j) (3) (A) (abandonment) and (D) (no ongoing parent-child relationship).

record with the department prior to the adjudications of neglect that are the subject of this appeal. See *Williams* v. *Ragaglia*, supra, 261 Conn. 225. Thus, even if we were to review and to reverse the present adjudications, neither the status of the respondent nor her children with the department would change. The children will have been adjudicated neglected by virtue of the 2008 adjudications, and the respondent will remain the parent of children previously found to have been neglected. Thus, because of the 2008 neglect adjudications, which were not appealed, our review and reversal of the present neglect adjudications could not provide the practical relief of removing the respondent's children from the ambit of § 17a-112 (j) (3) (B) (i).

Moreover, we are aware of no authority preventing the department or a court from considering the evidence underlying the present neglect adjudications in a subsequent termination or predictive neglect proceeding, regardless of whether the adjudications themselves stand.[7] Contrarily, in termination and predictive neglect proceedings, courts are often presented with a broad evidentiary foundation encompassing many years, independent of previous judicial findings or department substantiations. See, e.g., *In re Mia M.*, 127 Conn. App. 363, 373, 14 A.3d 1024 (2011) (court should consider all potentially relevant evidence, despite length of prior time to which it relates); *In re Emerald C.*, 108 Conn. App. 839, 858–59, 949 A.2d 1266 (evidence concerning respondent's children in Ghana, whom he had abandoned, relevant consideration in forming "a historical perspective of the respondent's child caring and parenting abilities" for assessment of respondent's failure to rehabilitate), cert. denied, 289 Conn. 923, 958 A.2d 150 (2008); *In re Anna Lee M.*, 104 Conn. App. 121, 128, 931 A.2d 949 (court was required to obtain historical

---

[7] In fact, evidence of the unsubstantiated 2010 allegations of neglect were before the court in the present case.

perspective of respondent's child caring and parenting abilities), cert. denied, 284 Conn. 939, 937 A.2d 696 (2007); *In re Brianna F.*, 50 Conn. App. 805, 814, 719 A.2d 478 (1998) ("Because the parent-child relationship is at issue, all relevant facts and family history should be considered by the trial court when deciding whether to terminate the respondent's parental rights. . . . The parent-child relationship presents an ongoing dynamic that cannot be frozen in time. The entire picture of that relationship must be considered whenever the termination of parental rights is under consideration by a judicial authority."). Accordingly, the respondent has not established by more than mere conjecture that the present adjudications will have a material effect on a subsequent proceeding, above and beyond the consequences that could flow from the 2008 adjudications. See *In re Claudia F.*, 93 Conn. App. 343, 349, 888 A.2d 1138, cert. denied, 277 Conn. 924, 895 A.2d 796 (2006).

The respondent also argues that she will be unable to challenge the department's 2008 and 2010 neglect substantiations and her listing on the central registry[8] through the administrative hearing process if we dismiss her appeal as moot.[9] She asserts that if she is

---

[8] Section 17a-101k-1 (14) of the Regulations of Connecticut State Agencies provides in relevant part: " 'Central registry' or 'registry' means the confidential data file maintained as part of the department's computerized database, of persons who have been substantiated as individuals responsible for an act or acts of child abuse or neglect and for whom the commissioner has made a determination, based upon a standard of reasonable cause, that the individual poses a risk to the health, safety or well-being of children . . . ."

[9] The respondent states in her reply brief that in October, 2010, she requested hearings regarding both the 2008 and 2010 substantiations and registry findings. "While our rules do not ordinarily permit us to consider information that is not contained in the trial record, we may do so when a question of mootness is raised." *Pollio* v. *Conservation Commission*, 32 Conn. App. 109, 114, 628 A.2d 20 (1993). The petitioner has not objected to the respondent's offering. Thus, we will consider the respondent's argument regarding the potential collateral consequences related to the alleged possible denial of her claimed administrative remedies.

not allowed to challenge in this court the department's neglect substantiations underlying the court's neglect adjudications, the substantiations will remain in the department's records, rather than be expunged after five years.[10] She contends that the department will rely on the substantiations in future investigations, the substantiations may damage her reputation because "substantiations and unsubstantiated allegations not yet expunged" may be disclosed and, "if the substantiations are not reversed, the likelihood of a reversal of the decision to place [the respondent] on the [central registry] is diminished." We are not persuaded.

Initially, we note that the parties have provided no indication that the respondent's ability to challenge her placement on the central registry through the administrative process described in General Statutes § 17a-101k and, thereafter, the court appeals process, would be foreclosed by dismissal of the present appeal.[11] See, e.g., *Frank* v. *Dept. of Children & Families*, 134 Conn. App. 288, 37 A.3d 834 (2012); *Albright-Lazzari* v. *Commissioner of Children & Families*, 120 Conn. App. 376, 991 A.2d 696, cert. denied, 297 Conn. 908, 995 A.2d 636, cert. dismissed sub nom. *Albright-Lazzari* v. *Hamilton*, 562 U.S. 998, 131 S. Ct. 516, 178 L. Ed. 2d 365 (2010). Furthermore, we are not required to analyze the respondent's conclusory assertion that the likelihood of a reversal of her placement on the registry will be diminished if the substantiations are not reversed. See *Carmichael* v. *Stonkus*, 133 Conn. App. 302, 307, 34 A.3d 1026, cert. denied, 304 Conn. 911, 39 A.3d 1121 (2012).

[10] We note that the department's substantiations of the respondent's neglect are separate and independent from the trial court's 2011 neglect adjudications that she appealed.

[11] The respondent states in her reply brief that she received a letter from the department deferring internal review of her challenge to the substantiations and registry listings and noting that "if the adjudication remains in place, [the respondent] may challenge her placement on the registry but not the substantiations." There is no indication that this letter was submitted to the trial court.

Likewise, we are not persuaded by the respondent's argument that dismissal of the present matter will foreclose her ability to challenge the substantiations administratively. The respondent contends that, under the department's policy, a failure to overturn the court's adjudications of neglect will result in the denial of her administrative hearings as a matter of course. The respondent points to § 17a-101k-4 (d) of the Regulations of Connecticut State Agencies and the department's policy manual in support of her argument.[12] Section 17a-101k-4 (d) provides that a "request for an internal review shall be denied by the department when a civil court proceeding has been finally disposed with a factual determination by the court that the identified person committed the act of child abuse or neglect that is the subject of the substantiation."[13] We reject the respondent's argument, again noting that the court's adjudications of neglect challenged on appeal are not

---

[12] Section 22-12-4 of the department's policy manual provides in relevant part: "A request for a substantiation hearing shall be denied by the Department when a criminal, civil, probate court or administrative proceeding has resulted in a finding that the perpetrator has committed the act of child abuse or neglect that is the subject of the substantiation." Dept. of Children and Families Policy Manual § 22-12-4, available at the department's website, http://www.ct.gov/dcf/cwp/view.asp?a=2639&Q=332388 (last visited April 23, 2012).

[13] The respondent's reliance on § 17a-101k-4 (d) of the Regulations of Connecticut State Agencies in support of her argument related to the administrative hearing process is misplaced. That regulation concerns internal review of substantiations and registry findings. The applicable regulation governing administrative hearings is codified at § 17a-101k-7 (i) of the Regulations of Connecticut State Agencies, which provides: "A request for an administrative hearing shall be denied by the department when a civil court proceeding has been finally disposed with a factual determination by the court that the identified person committed the act of child abuse or neglect that is the subject of the substantiation. Notwithstanding the foregoing, the department shall proceed with an administrative hearing for the sole purpose of determining the legal sufficiency of the registry finding in any civil case that does not result in a factual determination that at least one of the circumstances listed in subsection (b) of section 17a-101k-3 of the Regulations of Connecticut State Agencies exists."

findings about the respondent, but are directed at the status of her children.[14] See footnote 4 of this opinion.

We next turn to the respondent's claim that the present appeal falls within the capable of repetition yet evading review exception to the mootness doctrine. The respondent challenges the court's adjudications of neglect and argues that there is a reasonable likelihood that the question presented in this case will arise again in the future, both for the respondent and for similarly situated parents. She further contends that the "substantial majority of such cases would become moot before appellate litigation could be completed because, where there is no actual inadequacy in parenting, the dispositions are inherently time limited because, as in this case, only minimal periods of protective supervision would be imposed." She contends that the present case raises a matter of public importance. We are not persuaded.

"[A]n otherwise moot question may qualify for review under the capable of repetition, yet evading review exception. To do so, however, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must

---

[14] We further note that the respondent does not argue that there are subordinate factual findings in the record concerning her conduct. To the contrary, the respondent argues, with regard to the merits of the present appeal, that the court's finding of neglect was improper because it reached only "two factual conclusions—that there were prior substantiations and that Alba was pregnant."

have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *In re Forrest B.*, 109 Conn. App. 772, 775–76, 953 A.2d 887 (2008).

The respondent states that "[i]n this case, the challenged action is the Court's adjudication of neglect based solely on the prior substantiation and the child's recent pregnancy." Aside from her conclusory assertion that a majority of similar cases would become moot because a minimal period of protective supervision would be ordered in those cases, the respondent has failed to offer any authority that suggests that a substantial majority of such cases will be disposed of with only minimal periods of supervision imposed, instead of an order of commitment of the child to the commissioner pursuant to General Statutes § 46b-129 (j), or that such cases "are, by their very nature, of such a limited duration that there is a strong likelihood that they will become moot before appellate litigation can be concluded. See *Drabik* v. *East Lyme*, 97 Conn. App. 142, 146, 902 A.2d 727 (2006)." *In re Forrest B.*, supra, 109 Conn. App. 776. Accordingly, we reject her claim that the present matter is capable of repetition yet evading review under the first criterion of that exception.

The appeal is dismissed.

In this opinion the other judges concurred.