******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE JULIE J.*
## (AC 35984)

DiPentima, C. J., and Beach and Bishop, Js.

*Argued March 14—officially released May 9, 2014***

(Appeal from Superior Court, judicial district of Litchfield, Juvenile Matters at Torrington, Hon. Thomas F. Upson, judge trial referee.)

*Lisa M. Vincent*, for the appellant (respondent father).

*Susan T. Pearlman*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (petitioner).

*Opinion*

BISHOP, J. The respondent father appeals from the August 30, 2013 judgment of the trial court adjudicating his minor child, Julie J.,[1] abused and neglected, and transferring guardianship to her paternal grandmother.[2] Because we conclude that the respondent's appeal is moot, we dismiss it.

The record discloses the following relevant factual and procedural history. On November 29, 2012, the petitioner, the Commissioner of Children and Families, opened an investigation after a school administrator reported that Julie had multiple bruises on her face. Julie then was removed from school under the protective custody of the Torrington Police Department and transported to Charlotte Hungerford Hospital in Torrington for further evaluation. Upon being questioned, Julie informed an investigator for the Department of Children and Families (department) that the bruises on her face had been caused by being kicked into a closet door by the daughter of the respondent's girlfriend, Lashanda D., and by a cell phone, which the respondent had thrown at her. On that same day, Sergeant Richard Dowd and a department investigator, Michelle Colleoni, interviewed the respondent at his home. Neither Dowd nor Colleoni found the respondent to be credible. As a result, the petitioner sought a family placement for Julie and advised the respondent that if a relative could not be found, Julie would be removed from her home and placed in nonrelative foster care under a ninety-six hour hold. See General Statutes § 17a-101g (f). In response, the respondent and the department signed a safety plan, which placed Julie with her paternal grandmother and also prohibited any unsupervised contact between Julie and the respondent or Lashanda.

On February 22, 2013, the petitioner filed a petition for an adjudication of neglect on behalf of Julie and the three other children living with the respondent. On March 1, 2013, the respondent and Lashanda were arrested and charged with risk of injury to a child in violation of General Statutes § 53-21 in conjunction with their alleged abuse of Julie. On March 5, 2013, Julie's paternal grandmother filed an ex parte motion for an order of temporary custody with respect to Julie. The motion was granted, and a contested hearing was set for March 21, 2013. On the hearing date, however, the respondent and the grandmother reached an agreement sustaining the order of temporary custody and also agreed that the department would be responsible for arranging and paying for reunification services between Julie and the respondent.

Notwithstanding this agreement with the grandmother, the respondent contested the petitioner's neglect petition and a trial date was scheduled accordingly. Before the scheduled trial date, the grandmother

filed a motion to vacate the order of temporary custody and to transfer guardianship to her permanently. Her motion was consolidated with the respondent's neglect trial, which was set to begin on May 20, 2013. On the first day of trial, the respondent filed a motion to vacate the order of temporary custody, which the court also consolidated with the neglect trial. After nine days of trial, spanning three months, the court, on August 30, 2013, adjudicated Julie neglected and abused. The court also transferred guardianship of Julie to her grandmother under six months of protective supervision.

On September 9, 2013, the respondent filed this appeal, challenging the court's March 21, 2013 order sustaining the order of temporary custody, the August 30, 2013 adjudication of Julie as abused and neglected, and the transfer of Julie's guardianship to the grandmother. On November 18, 2013, however, the petitioner filed a motion to open and modify the August 30, 2013 disposition to modify the court's order transferring the guardianship of Julie from her grandmother to a commitment of custody of Julie to the petitioner. At the hearing on the motion on December 2, 2013, the respondent indicated that he was in agreement with the motion even though he preferred that Julie be returned to his custody and despite his having filed no motion seeking Julie's custody. By agreement of the parties, the trial court modified its August 30, 2013 disposition and committed Julie to the custody of the petitioner until further order of the court. The respondent did not amend his appeal following the order committing Julie to the custody of the petitioner.

Although it is difficult to glean from the record the precise issues the respondent seeks to raise on appeal, the respondent stated at oral argument before this court that he is appealing from the August 30, 2013 adjudication of Julie as abused and neglected, the transfer of Julie's guardianship to her grandmother, and "the process" leading up to trial. On appeal, the petitioner renews the argument that the appeal is moot on the basis of the claim that the December 2, 2013 agreed order of commitment to the petitioner superseded the August 30, 2013 adjudication and transfer of guardianship. See footnote 2 of this opinion. In response, the respondent contends that his appeal is not moot but, even if it were, his appeal is saved because there are collateral consequences stemming from the neglect and abuse adjudication. We agree with the petitioner.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of

actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *In re Forrest B.*, 109 Conn. App. 772, 775, 953 A.2d 887 (2008). "Mootness is an exception to the general rule that jurisdiction, once acquired, is not lost by the occurrence of subsequent events. . . . Because mootness goes to the power of this court to entertain an appeal, we address the issue as a threshold matter." (Citation omitted.) *In re Alba P.-V.*, 135 Conn. App. 744, 747, 42 A.3d 393, cert. denied, 305 Conn. 917, 46 A.3d 170 (2012). "In determining mootness, the dispositive question is whether a successful appeal would benefit . . . [the] [respondent] in any way. . . . In other words, the ultimate question is whether the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *State* v. *Chavarro*, 130 Conn. App. 12, 16, 21 A.3d 541 (2011).

Importantly, "[u]nder the collateral consequences doctrine, this court may retain jurisdiction and consider a claim that otherwise has been rendered moot when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. . . . Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court . . . determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." (Citation omitted; internal quotation marks omitted.) Id., 18.

As noted, the record reveals that on December 2, 2013, the respondent agreed to the petitioner's motion to modify the August 30, 2013 disposition from guardianship with Julie's grandmother to commitment of Julie to the custody of the petitioner. Because the adjudication and transfer of guardianship of August 30, 2013, were superseded by the agreed upon December, 2013 modification, we can grant the respondent no practical relief from the August 30, 2013 orders. His appeal, accordingly, is moot.

The respondent nevertheless argues that we retain jurisdiction pursuant to the collateral consequences doctrine because the state could use the neglect trial record against him in his pending criminal proceeding. The respondent fails to explain, however, either by reference to any decisional law or through persuasive argument, the manner in which the neglect adjudication could be utilized against him in the pending criminal matter. Accordingly, we need not address the respondent's claim of collateral consequences, as it has been

inadequately briefed. See *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163, 20 A.3d 702 (2011) ("[i]t is well settled that [w]e are not required to review claims that are inadequately briefed" [internal quotation marks omitted]).

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** May 9, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The attorney for the minor child filed a statement adopting the brief of the petitioner, the Commissioner of Children and Families, in this appeal.

[2] On January 23, 2014, while this appeal was pending, the petitioner, the Commissioner of Children and Families, filed a motion to dismiss the respondent's appeal on the ground that it was moot. On February 11, 2014, we granted the petitioner's motion to dismiss in part, ordering that: "[T]he appeal is dismissed to the extent that the respondent father is challenging the order of temporary custody of March 21, 2013, and denied as to the challenge to the August 30, 2013 orders." Therefore, we do not address the respondent's first claim on appeal concerning the March 21, 2013 order of temporary custody.