Maria TAPIA, Jesus Tapia, Elizabeth Diaz, and Thomas Rugelio, Plaintiffs,

v.

Mayron MATEO and K.E.R. Cleaning Services, Inc., Defendants.

Civil Action No. 3:14–CV–00247 (VLB).

United States District Court,
D. Connecticut.

Signed March 31, 2015.

James Bhandary–Alexander, New Haven Legal Assistance Assoc. Inc., New Haven, CT, for Plaintiffs.

MEMORANDUM OF DECISION GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [Dkt. # 16] AND AWARDING PLAINTIFFS DAMAGES

VANESSA L. BRYANT, District Judge.

## I. INTRODUCTION

Plaintiffs, Maria Tapia, Jesús Tapia, Elizabeth Diaz ("Diaz") and Thomas Rugelio ("Rugelio"), bring claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") and the Connecticut Minimum Wage Act, Conn. Gen.Stat. § 31–58 *et seq.* (the "CMWA") against Defendants Mayron Mateo ("Mateo") and K.E.R. Cleaning Services ("KER") for unpaid wages. Currently before the Court is Plaintiffs' motion for default judgment, pursuant to Federal Rule of Civil Procedure 55. For the reasons that follow, Plaintiffs' motion for default judgment is GRANTED.

## II. BACKGROUND

On February 27, 2014, Plaintiffs filed their Complaint. *See* [Dkt. # 1]. The Complaint alleges the following facts. Plaintiffs, Connecticut residents, were hired by the Defendants to clean one of two Cinemark movie theaters. [*Id.* at

¶¶ 4, 8–9, 16, 22]. During the course of their employment, Defendant KER, a Florida company, hired, paid, supervised, and scheduled Plaintiffs. [*Id.* at ¶ 6]. Mateo, KER's President and CEO, made all relevant decisions regarding hiring and firing, payment of wages, scheduling, and work duties of the Plaintiffs. [*Id.* at ¶ 7]. Mateo made regular visits to Connecticut, employed dozens of workers in Connecticut, and oversaw Plaintiffs' work in the two Cinemark theaters. [*Id.*].

Plaintiffs Maria and Jesús Tapia were hired to clean the Cinemark movie theater in North Haven, Connecticut. [*Id.* at ¶¶ 8–9]. Upon their hiring, Defendants agreed to pay each a flat rate of $40 per day. [*Id.* at ¶ 10]. Plaintiffs cleaned the theater seven days a week. [*Id.*]. During September 2012, Maria Tapia was not paid for a two-week period, during which she worked her normal, daily, schedule. [*Id.* at ¶ 11]. In October 2013, both Maria and Jesús Tapia were not fully compensated for their labor. [*Id.* at ¶ 12]. For a sixteen-day period in October 2013, they were each paid only $600, when they each should have been paid $640. [*Id.*]. Finally, neither Maria nor Jesús Tapia was compensated for their final twenty-five days of work, despite their repeated requests for payment. [*Id.* at ¶¶ 13–14]. After they refused to work until they were paid, the Tapias were terminated. [*Id.* at ¶ 15].

Plaintiff Diaz worked at the same theater as the Tapias. [*Id.* at ¶ 16]. She was also hired at the same $40 per day rate and worked seven days a week. [*Id.* at ¶ 17]. Also like the Tapias, over a seventeen-day period, Diaz was underpaid by $680, and went unpaid over the final twenty days of her employment, despite her repeated requests for payment. [*Id.* at ¶¶ 18–20]. Following this stretch of twenty days of unpaid labor, Diaz quit her job. [*Id.* at ¶ 21].

Finally, Plaintiff Rugelio was employed by Defendants at a different Cinemark movie theater. [*Id.* at ¶ 22]. Rather than a per day wage, Rugelio agreed to receive a flat rate of $825 every two weeks in exchange for cleaning the theater on a daily basis. [*Id.* at ¶ 23]. For the final four weeks of his employment (*i.e.* two pay periods), Defendants did not pay Rugelio at all. [*Id.* at ¶ 24].

In the course of conducting their business, the Defendants never posted any notices advising Plaintiffs of their rights to a minimum wage, overtime, or all wages due, nor in any other way notified Plaintiffs of these rights. [*Id.* at ¶ 26]. Defendants also did not keep accurate records of Plaintiffs' hours or pay. [*Id.* at ¶ 27].

On March 6, 2014, Defendants were properly served with the Complaint. *See* [Dkt. ## 12–13]. Despite being served with the Complaint, neither Defendant entered an appearance or responded to the Complaint. As a result, on April 1, 2014, Plaintiffs moved for default entry, pursuant to Rule 55(a). [Dkt. # 14]. On April 10, 2014, the Court entered default against the Defendants. [Dkt. # 15].

## III. DISCUSSION

Plaintiffs seek a total judgment against Defendants in the amount of $21,177.50. [Dkt. # 16 at 2]. This figure is based on the actual amount in wages each of the plaintiffs are owed, an award of liquidated damages under both the FLSA and Connecticut minimum wage law for each of the plaintiffs, and attorney's fees and costs. *See* [*id.*; Dkt. # 16–1 at 25–27].

### a. *Default Judgment Principles*

It is settled in our circuit that Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See, e.g., New York v. Green,* 420 F.3d 99, 104 (2d Cir.2005).

**4**

First, a plaintiff must acquire an entry of default against the defendant in question. Fed.R.Civ.P. 55(a). Second, after the default is entered, a plaintiff must either request a default judgment from the clerk or move the court for a default judgment. Fed.R.Civ.P. 55(b)(1)-(2). The clerk can enter a default judgment only if the amount sought is a sum certain or a sum that can be made certain by computation. Fed.R.Civ.P. 55(b)(1). "In all other cases, the party must apply to the court for default judgment." Fed.R.Civ.P. 55(b)(2). "The determination of whether to grant a motion for default judgment lies within the sound discretion of the district court." *Int'l Brands USA, Inc. v. Old St. Andrews Ltd.*, 349 F.Supp.2d 256, 261 (D.Conn.2004) (citing *Shah v. N.Y. Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999)).

■ "Upon entry of a default judgment for 'failure to plead or otherwise defend' against a complaint, a defendant admits every 'well-pleaded allegation' of the complaint except those relating to damages." *Andrade v. Kwon*, No. 3:08–cv–479 (SRU), 2012 WL 3059616, at *3 (D.Conn. Mar. 26, 2012) (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973) and *Flaks v. Koegel*, 504 F.2d 702, 704 (2d Cir.1974)). Accordingly, the Court takes all of the above allegations, except those relating to damages as true.

Plaintiffs' claims under federal and Connecticut law are susceptible to mathematical computation. Thus, the Court "may forgo an evidentiary hearing 'as long as [it] ensure[s] that there [is] a basis for the damages specified.'" *Andrade*, 2012 WL 3059616, at *3 (quoting *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir.1989)).

### b. *Plaintiffs Have Pled Sufficient Facts in Support of their FLSA Claim*

■ First, the Court must confirm that Plaintiffs have pled sufficient facts to support their cause of action under the FLSA. Rule 8(a) of the Federal Rules of Civil Procedure governs whether the allegations in the pleadings state a valid cause of action. Fed.R.Civ.P. 8(a) (establishing that a claim for relief must contain a "short and plain" statement of the claim). Specifically, the Supreme Court has held that to state a cause of action, a plaintiff need "only [allege] enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

■ Under the FLSA, Plaintiffs must prove that the Defendants employed them and paid them less than minimum wage. *See* 29 U.S.C. § 206. To be considered employed by the Defendants, Plaintiffs must show that the Defendants controlled their conditions of employment. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir.2003). Among the factors the Second Circuit has found "pertinent" to determining the existence of an employer-employee relationship for FLSA purposes are whether the Defendants had hiring authority, supervisory responsibility, and control over wages and records. *Id.* at 69.

Plaintiffs have pled sufficient facts to establish a violation of the FLSA. According to their Complaint and accompanying affidavits, the Defendants controlled their work hours, supervised their work, determined their pay, and compensated them at an hourly rate below the federal minimum wage. *See* [Dkt. # 1, Compl. at ¶¶ 6–7, 10–14, 17–20, 23–25; Dkt. # 16–2, Maria Tapia Decl. at ¶¶ 3–10; Dkt. # 16–3, Jesús Tapia Decl. at ¶¶ 3–9; Dkt. # 16–4, Diaz

Decl. at ¶¶ 3–7; Dkt. # 16–5, Rugelio Decl., at ¶¶ 2–7].

c. *Plaintiffs Have Pled Sufficient Facts in Support of their CMWA Claim*

█ The CMWA "provides wage and overtime guarantees similar to the FLSA." *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n. 2 (D.Conn.2002). However, the CMWA employs a somewhat different definition of "employer" than the FLSA. Under the CMWA, an employer is "an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech., Inst., Inc.*, 243 Conn. 454, 462, 704 A.2d 222 (Conn.1997). Plaintiffs' allegations and affidavits are sufficient to satisfy the definition of "employer" under the CMWA.

d. *Plaintiffs Are Entitled to Recover Liquidated Damages Under the FLSA and CMWA*

█ Both the FLSA and CMWA permit for the recovery of liquidated damages. *See* 29 U.S.C. § 216(b); Conn. Gen.Stat. § 31–68(a). However, the standard for obtaining liquidated damages under each is not the same. Under the FLSA, "[d]ouble damages are the norm, single damages the exception." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (citation and quotation omitted). This is because "the purpose of liquidated damages" under the FLSA "is compensatory, not punitive." *Id.* To avoid an award of liquidated damages, an employer must "show[ ] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. It is the employer's "burden to prove both subjective good faith and objective reasonableness." *Reich*, 121 F.3d at 71. As the Defendants have defaulted, they cannot make such a showing. Accordingly, Plaintiffs are entitled to liquidated damages under the FLSA in "an additional equal amount" to their lost wages. 29 U.S.C. § 216(b).

█ A closer question is whether Plaintiffs are entitled to liquidated damages under the CMWA, in addition to liquidated damages under the FLSA. First, while courts in this Circuit are split on the issue, there is considerable authority supporting an award of liquidated damages under both the FLSA and related state minimum wage statutes. *See Morales v. Cancun Charlie's Rest.*, No. 3:07–cv–1836 (CFD), 2010 WL 7865081, at *8–9 (D.Conn. Nov. 23, 2010) (awarding double liquidated damages under the FLSA and the CMWA); *Wellington v. Duncan*, No. 3:13–cv–1179 (JBA) (D.Conn. Jul. 2, 2014) (same); *Wei Yan Yan v. 520 Asian Rest. Corp.*, No. 13–cv–2417 (KNF), 2014 WL 7177259, at *9 (S.D.N.Y. Dec. 17, 2014) (awarding double liquidated damages under the FLSA and the New York Labor Law); *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011) (same); *Hernandez v. P.K.L. Corp.*, No. 12–cv–2276, 2013 WL 5129815, at *6 (E.D.N.Y. Nov. 23, 2013) (stating that an award of liquidated damages under both the FLSA and the New York Labor Law "appears to be the majority approach"). An award of double liquidated damages is particularly reasonable in the context of a default judgment, as the Defendants have failed to object. *See Wellington*, at *3; *Hernandez*, 2013 WL 5129815, at *6 n. 6.

█ While recoverable, such an award is not automatic. Unlike the FLSA, to recover liquidated damages under the CMWA, "[a]n employee must show evidence of bad faith, arbitrariness, or unreasonableness." *Morales*, 2010 WL 7865081,

at \*9. Here, Plaintiffs' undisputed allegations are sufficient to satisfy this requirement. The Complaint asserts that for over a year—September 2012 through November 12, 2013—Defendants frequently underpaid and even declined to compensate employees at multiple locations. [Dkt. # 1, Compl. at ¶¶ 11, 19, 24]. At times, non-payment extended up to a full month. [*Id.* at ¶ 24]. When the employees confronted Defendants about the chronic under- and non-payments (which each of them did on multiple occasions), Defendants responded by (i) terminating the employees on the same day they made their request,[1] (ii) refusing to make good on the payments, (iii) offering empty promises of payment, or (iv) they simply never responded at all. *See* [Dkt. # 16–2, Maria Tapia Decl. at ¶¶ 9–10; Dkt. # 16–3, Jesús Tapia Decl. at ¶¶ 7–9; Dkt. # 16–4, Diaz Decl. at ¶ 7; Dkt. # 16–5, Rugelio Decl., at ¶¶ 6, 8]. In addition, Defendant KER is a multi-state business that has a multi-location contract with at least one large movie theater company. As a significant business, it must have been aware of its obligation both to post mandatory wage notices and to compensate its employees at the rate required by law in a timely manner. The Court cannot conclude but that the Defendants willfully and unreasonably withheld payment from Plaintiffs. As a result, an award of liquidated damages under the CMWA is also appropriate in this case.

For the same reasons, pursuant to Conn. Gen.Stat. § 31–72, Plaintiffs are entitled to liquidated damages (in addition to actual damages) in an amount equal to the difference between what they were paid and what the Defendants promised they would receive. *See Sarrazin v. Coastal, Inc.,* 311 Conn. 581, 615, 89 A.3d 841 (Conn.2014) ("[I]t is well established ... that it is appropriate for a plaintiff to recover attorney's fees, and double damages under [§ 31–72], only when the trial court has found that the defendant acted with bad faith, arbitrariness, or unreasonableness."). However, as Plaintiffs acknowledge, such an award of damages would come in lieu, rather than on top, of an award for liquidated damages under the FLSA and the CMWA. *See* [Dkt. # 16–1 at 25].

e. *Attorneys' Fees and Costs*

██ Under the FLSA, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). "Even though [Plaintiffs are] represented by non-profit counsel," they are "still entitled to recover attorneys' fees." *Morales,* 2010 WL 7865081 at \*9 (citing *Blum v. Stenson,* 465 U.S. 886 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). In determining a reasonable hourly rate, a court is to consider "what a reasonable, paying client would be willing to pay," assuming the client wishes "to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Ass'n v. Cnty. of Albany,* 493 F.3d 110, 112, 118 (2d Cir. 2007).

Here, counsel, an experienced litigator in the area of federal wage and hour cases, requests attorneys' fees at a rate of $300 per hour. *See* [Dkt. # 16–7, Bhandary–Alexander Decl. at ¶¶ 5, 7–8, 11]. The Court finds this request in line with fee requests approved by other courts in this District in connection with FLSA matters. *See Wellington,* 3:13–cv–1179 (JBA) at \*3 (approving $300 hourly rate for Plaintiffs' counsel in a different FLSA and CMWA case); *Morales,* 2010 WL 7865081, at \*9

---

**1.** Defendant Mateo terminated both Maria and Jesús Tapia on October 25, 2013, the same day they or someone on their behalf contacted him about weeks' worth of non-payments.

(approving hourly rate of $350 for law clinic supervisor); *Perez v. By Your Side Homemaker*, No. 3:08–cv–602, 2009 WL 1858263, at *11 (D.Conn. Jun. 25, 2009) (same). The thirty hours for which counsel seeks compensation also appear reasonable. Finally, the Court awards Plaintiffs their reasonable costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment against Defendants. The clerk is directed to enter judgment in favor of Plaintiffs in the following amounts: (1) Plaintiff Maria Tapia is awarded $3,325, consisting of $1,155 in unpaid minimum wages and liquidated damages under the FLSA and CMWA in the amounts of $1,015 and $1,155, respectively; (2) Jesús Tapia is awarded $1,995, consisting of $693 in unpaid minimum wages and liquidated damages under the FLSA and CMWA in the amounts of $609 and $693, respectively; (3) Elizabeth Diaz is awarded $3,025, consisting of $1,055 in unpaid minimum wages and liquidated damages under the FLSA and CMWA in the amounts of $915 and $1,055, respectively; and (4) Plaintiff Thomas Rugelio is awarded $3,300, consisting of unpaid promised wages totaling $1,650 and liquidated damages, pursuant to Conn. Gen.Stat. § 31–72, in the amount of $1,650. Plaintiffs are further awarded attorneys' fees and costs totaling $9,507.50. The Clerk is directed to close this case.

IT IS SO ORDERED.