******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

COLE WILLIAMS ET AL. *v*. GENERAL
NUTRITION CENTERS, INC.,
ET AL.
(SC 19829)

Palmer, Eveleigh, McDonald, Espinosa, Robinson and D'Auria, Js.*

*Syllabus*

Pursuant to a state wage law (§ 31-76c), employees not exempt from over-
time pay must be paid at least one and one-half times their "regular
rate" of pay for each hour they work in excess of forty hours in a week.

Pursuant to a state wage regulation (§ 31-62-D4), when an employee is paid
a commission as a part of his or her earnings, the regular hourly rate
for the purpose of calculating overtime is to be determined by dividing
the "employee's total earnings by the number of hours in the usual
[workweek] . . . ."

The plaintiffs, who were employed as managers at the defendants' retail
stores in Connecticut, and who received sales commissions in addition
to a base salary, sought damages from the defendants in federal court,
claiming that the defendants' use of a certain method to calculate their
rate of pay for the purpose of determining the amount they were entitled
to in overtime pay violated state wage laws and regulations. The defen-
dants used the fluctuating workweek method of calculating overtime
pay, which is allowed under federal law, pursuant to which an employee's
regular rate of pay is calculated by dividing total weekly pay by the
number of hours he or she actually works in a given week. The regular
rate of pay is then multiplied by one and one-half times for the hours
beyond forty that an employee works that week to determine his or her
overtime pay. The United States District Court certified to this court
the question of whether a Connecticut employer may use the fluctuating
workweek method to calculate overtime pay under state wage laws and
regulations. *Held*:

1. The state wage laws, including § 31-76c, did not preclude the defendants'
use of the fluctuating workweek method of calculating the plaintiffs'
overtime pay: the wage laws were silent with respect to how to calculate
the regular rate of pay for all types of employees other than delivery
drivers and sales merchandisers, and, by setting a specific formula for
only those categories of employees, the legislature apparently did not
intend to limit the formulas for calculating overtime pay for other catego-
ries of employees, including the plaintiffs; moreover, § 31-76c was nearly
identical to the federal overtime statute (29 U.S.C. 207 [a] [1]), which
has been construed by the United States Supreme Court to allow the
use of the fluctuating workweek method.

2. The plain meaning of the state wage regulations promulgated by the
Department of Labor, including § 31-62-D4, requires mercantile or retail
employers, such as the defendants, to determine an employee's regular
rate of pay for the purpose of calculating overtime pay by dividing the
employee's weekly pay by the hours the employee usually, rather than
actually, works in a week, and, accordingly, the wage regulations pre-
cluded the defendants' use of the fluctuating workweek method to calcu-
late the plaintiffs' overtime pay, as that method requires consideration
of the hours the employee actually works; by setting forth a formula
for retail employers, such as the defendants, to use when calculating
overtime pay, the regulations left no room for an alternative formula,
such as the fluctuating workweek method, the contrary interpretation
of the regulations urged by the defendants was not supported by the
text of § 31-76c and was unreasonable, the absence of enforcement
action by the Department of Labor to preclude the use of the fluctuating
workweek method, without more, did not establish an official agency
interpretation in favor of the use of such method that was entitled to
judicial deference, and, because the meaning of the regulations and
statutes governing overtime were plain and ambiguous, this court
declined to consider potentially contrary extratextual evidence such as
the legislative history of the wage laws.

Argued May 4—officially released August 17, 2017**

*Procedural History*

Action to recover damages for the defendants' alleged violations of Connecticut wage laws and regulations, and for other relief, brought to the United States District Court for the District of Connecticut, where the court, *Bryant, J.*, denied the defendants' motion to dismiss; thereafter, the court, *Bryant, J.*, certified a question of law to this court concerning the application of Connecticut wage laws and regulations.

*Anthony J. Pantuso III*, with whom, on the brief, were *Richard E. Hayber, Joshua R. Goodbaum* and *Stephen J. Fitzgerald*, for the appellants (plaintiffs).

*Robert W. Pritchard*, pro hac vice, with whom were *Lori B. Alexander* and, on the brief, *Matthew K. Curtin*, for the appellees (defendants).

*Opinion*

D'AURIA, J. Connecticut law requires employers to pay certain employees one and one-half times their "regular rate" of pay for any overtime hours they work. General Statutes § 31-76c. Calculating overtime pay for employees paid a fixed hourly wage is straightforward—their "regular rate" is their hourly wage, so they must be paid one and one-half times their hourly wage for each overtime hour worked. General Statutes § 31-76c. But for employees paid in whole or in part by commission, their average hourly rate will tend to fluctuate, leaving them without a readily apparent regular rate to use for calculating overtime pay. In the present case, we are asked to consider how employers must determine the regular rate for retail employees whose pay fluctuates each week because they receive commissions.

I

This case comes to us on a certified question from the United States District Court for the District of Connecticut. The factual record, although limited, contains the following facts. The plaintiffs, Cole Williams and Novack Lazare, worked as managers at General Nutrition Centers (GNC) stores in Connecticut, which are owned and operated by the defendants, General Nutrition Centers, Inc., and General Nutrition Corporation. The plaintiffs were paid a base weekly salary, plus commissions on sales of certain premium merchandise, and they received overtime pay whenever they worked more than forty hours in a week. Their base salaries were fixed, but their commission payments fluctuated week to week based on their sales.

The defendants calculated the plaintiffs' overtime pay using a method allowed under federal law, commonly known as the fluctuating workweek[1] method (fluctuating method). See *Overnight Motor Transportation Co.* v. *Missel*, 316 U.S. 572, 579–80, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942); 29 C.F.R. §§ 778.114 and 778.118 (2016). This method is used to calculate the regular rate for salaried employees whose work hours fluctuate week to week and for employees whose pay varies each week because of commissions. See *Overnight Motor Transportation Co.* v. *Missel*, supra, 579–80; 29 C.F.R. §§ 778.114 and 778.118 (2016). Because these employees do not have a consistent hourly rate of pay, their regular rate is calculated each week by dividing their total weekly pay by the number of hours they worked during the week. See 29 C.F.R. §§ 778.114 and 778.118 (2016). This formula yields their regular rate for that week, which is used to determine their overtime pay. For example, if an employee has a weekly salary of $500 and works fifty hours in a given week, his regular rate is $10 per hour ($500/50), and his overtime rate is $15 per hour ($10 x 1.5). Because the employee has

received only $10 per hour for each hour worked, he must be paid an additional $5 for each overtime hour to bring his pay to the required $15 per hour rate for all hours in excess of forty.

Under the fluctuating method, the employee's regular rate, and, therefore, his overtime pay rate, decreases as he works more overtime hours if he is paid a fixed salary. See *Overnight Motor Transportation Co.* v. *Missel*, 316 U.S. 579–80; *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 479–80, 958 A.2d 1195 (2008). For example, suppose an employee is paid $500 per week and, in the first week, works fifty hours and, in the second week, works sixty hours. In the first week, the employee's regular rate is $10 per hour ($500/50); in the second week, it is $8.33 per hour ($500/60). The employee is entitled to one and one-half times his regular rate of pay for overtime hours, meaning that his overtime rate for the first week is $15 ($10 x 1.5) per overtime hour, whereas his overtime rate in the second week is $12.50 ($8.33 x 1.5) per overtime hour.

The plaintiffs brought an action against the defendants in the District Court,[2] claiming that the defendants' use of the fluctuating method to calculate the plaintiffs' regular rate for purposes of determining their overtime pay rate violated Connecticut wage laws.[3] The plaintiffs rely on a state Department of Labor (department) fair minimum wage order (wage order) governing the calculation of overtime pay for mercantile (or retail) employees.[4] The plaintiffs contend that the wage order prohibits use of the fluctuating method because it requires use of an alternative formula. See Regs., Conn. State Agencies § 31-62-D4. Under the plaintiffs' interpretation of the wage order, an employer must calculate an employee's regular rate of pay by dividing his total weekly pay by the hours he *usually* works in a week, not the hours he *actually* works. For the plaintiffs, who claim they usually worked forty hour workweeks, this would yield a higher regular rate of pay than the fluctuating method would yield, which in turn would yield a greater overtime rate. For instance, if an employee made $500 per week, and worked fifty hours, his regular rate under the fluctuating method would be $10 per hour ($500/50), and he would be entitled to $15 for each overtime hour. But, if he usually worked forty hours per week, his regular rate would be $12.50 per hour ($500/40), and he would be entitled to $18.75 for each overtime hour.

The plaintiffs moved for class certification on behalf of certain other employees at GNC stores in Connecticut. The District Court did not rule on the class certification motion but, instead, certified a question to this court asking "whether an employer may use the [fluctuating] method to calculate overtime pay pursuant to [Connecticut wage laws; see General Statutes § 31-58 et seq.] and the wage order" applicable to mercantile

employees. See Regs., Conn. State Agencies § 31-62-D1 et seq.[5]

We accepted the question, which requires us to interpret Connecticut wage laws and regulations. Because we do not have the benefit of either a prior judicial or a time-tested agency construction of the applicable provisions, we construe the statutes and regulations in a plenary fashion.[6] See, e.g., *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 610, 89 A.3d 841 (2014). Moreover, because regulations have the same force and effect as statutes, we interpret both using the plain meaning rule. E.g., *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 578, 22 A.3d 518 (2011); see General Statutes § 1-2z. Applying these principles, we conclude that, although Connecticut wage laws do not prohibit the use of the fluctuating method for employees such as the plaintiffs, the wage order does.

## II

We turn first to the relevant wage laws. Section 31-76c sets forth the requirement that employees not exempt from overtime pay must be paid at least one and one-half times their regular rate of pay for each hour they work in excess of forty hours in a week. That section provides: "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." General Statutes § 31-76c.

The wage laws governing overtime pay do not define how to calculate the "regular rate" for employees like the plaintiffs. Although § 31-76c requires overtime pay of at least one and one-half times an employee's regular rate, it does not prescribe a method for determining the regular rate of employees not paid by the hour. Another provision, General Statutes § 31-76b (1), defines "regular rate," as used in § 31-76c, but it also does not explain how to calculate that rate, except for certain "delivery driver[s]" and "sales merchandiser[s] . . . ." Instead, § 31-76b (1) explains that, when calculating an employee's regular rate, an employer must include "all remuneration" paid to the employee, with certain exceptions. The last sentence of that provision sets forth a calculation method that applies only to employees "employed as a delivery driver or sales merchandiser . . . ." General Statutes § 31-76b (1). Their regular rate must be determined by dividing the total weekly pay by forty. Id. Neither party in the present case, however, claims that the plaintiffs are delivery drivers or sales merchandisers.

Because the wage laws are silent as to how to calculate the regular rate for all other types of employees, nothing in the wage laws expressly prohibits use of the

fluctuating method, and its approach of dividing total pay by actual hours worked, for employees who are not delivery drivers or sales merchandisers. By setting a specific formula for only one category of employees, it further appears that the legislature did not intend to limit the formulas that may be used for other categories of employees.

In addition, § 31-76c, which sets forth the overtime requirement, is nearly identical to the federal overtime statute, 29 U.S.C. § 207 (a) (1) (2012); see *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 596 (observing that § 31-76c "is indistinguishable from 29 U.S.C. § 207 [a] [1]"); and the United States Supreme Court has construed 29 U.S.C. § 207 (a) (1) to allow use of the fluctuating method. See *Overnight Motor Transportation Co.* v. *Missel*, supra, 316 U.S. 573 n.1, 579–80. We see no reason to interpret § 31-76c differently from its federal counterpart. Notably, the parties seem to agree on this point and have instead focused their arguments on whether the wage order allows use of the fluctuating method to compute the plaintiffs' regular rate.

We therefore conclude that the wage laws do not prohibit use of the fluctuating method to derive an employee's regular rate, with the sole exception of certain delivery drivers and sales merchandisers. See General Statutes § 31-76b (1).

### III

We next consider whether the wage order prohibits the use of the fluctuating method for mercantile employees subject to its mandates. The wage order, promulgated by the department, applies to all employees in the "[m]ercantile trade"; (internal quotation marks omitted) Regs., Conn. State Agencies § 31-62-D1 (c); which includes employees in the retail sales business. See Regs., Conn. State Agencies § 31-62-D1 (c). The parties agree that the wage order governs the calculation of the plaintiffs' overtime pay, but they disagree whether it allows the use of the fluctuating method.

Like § 31-76c, the wage order requires that mercantile employees be compensated at a rate of one and one-half times their regular rate of pay for all overtime hours worked in a week. Regs., Conn. State Agencies § 31-62-D2 (c). The wage order requires that overtime pay be based on the employee's regular *hourly* rate of pay. Regs., Conn. State Agencies § 31-62-D2 (c). Section 31-62-D2 (c) of the Regulations of Connecticut State Agencies provides that "[n]ot less than one and one-half times the employee's regular hourly rate shall be paid for all hours in excess of forty in any work week." And § 31-62-D4 of the Regulations of Connecticut State Agencies provides in relevant part that employers "shall establish a regular hourly rate for employees covered by this wage order. . . ."

For employees whose pay fluctuates because of com-

missions, and thus cannot be fixed in advance, the wage order provides a formula for determining their regular hourly rate each week to be used in calculating overtime pay. See Regs., Conn. State Agencies § 31-62-D4. The relevant section of the wage order provides in relevant part: "When an employee is paid a commission in whole or in part for his earnings, the regular hourly rate for the purpose of computing overtime shall be determined *by dividing the employee's total earnings by the number of hours in the usual work week* as supported by time records made in accordance with the provisions of section 31-62-D8."[7] (Emphasis added.) Regs., Conn. State Agencies § 31-62-D4. The parties in the present case disagree about what it means to divide by the "number of hours in the usual work week . . . ." Regs., Conn. State Agencies § 31-62-D4.

A

Turning first, as we must, to the text of the wage order, we interpret the phrase "number of hours in the usual work week" to refer to the number of hours an employee usually works in a week. The wage order does not define "usual work week," so we look to the common meaning of that phrase, as expressed in the dictionary. See, e.g., *Middlebury* v. *Connecticut Siting Council*, 326 Conn. 40, 49, 161 A.3d 537 (2017); see also General Statutes § 1-1 (a). The term "workweek" commonly refers to the hours worked during a week; for example, an employee who works a full-time schedule might say he has a forty hour workweek. See Webster's Third New International Dictionary (2002) p. 2635 (defining "workweek" in relevant part as "the hours . . . of work in a calendar week"). The wage order modifies "work week" with the adjective "usual," so the phrase "usual work week" naturally refers to the hours usually worked in a week. The plain meaning of "usual work week" in the wage order thus requires employers to divide the employee's pay by the hours usually worked in a week to calculate an employee's regular rate.

By setting forth its own formula for mercantile employers to use when computing overtime pay, one that requires them to divide pay by the usual hours worked to calculate the regular hourly rate, the wage order leaves no room for an alternative calculation method. Although the wage order leaves it to the employer and the employee to determine the employee's compensation arrangement—whether and how much the employee will be paid in salary and commissions, if any—it does not leave room for them to agree to a different method for calculating the employee's regular rate for the purpose of computing overtime pay. The wage order thus precludes the use of the fluctuating method's divide by actual hours approach, at least for employees covered by the wage order.

B

The defendants offer an alternative interpretation of the meaning of "usual work week," but we conclude that it is not supported by the text and is unreasonable. The defendants argue that "work week" does not refer to the hours usually worked in a week but to the fixed weeklong period of seven days that the employer has designated for its weekly payroll accounting (e.g., Sunday through Saturday). They thus suggest that the wage order's command to divide by "the number of hours in the usual work week" means that an employer must divide pay by the number of hours the employee worked during the fixed one week period that the employer usually uses for payroll accounting. They claim that this therefore requires employers to use a divide by actual hours approach, just like the fluctuating method.

For support, the defendants rely on a federal interpretive bulletin promulgated by the United States Department of Labor, which explains that "[a]n employee's workweek is a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods" that the employer uses for its weekly payroll accounting. 29 C.F.R. § 778.105 (2016). The defendants argue that the interpretive bulletin establishes that the term "workweek" is a legal term of art and that we must apply its specialized meaning instead of its dictionary definition in interpreting the wage order.

We disagree that "workweek" has become a legal term of art meaning only a fixed weeklong period, at least under Connecticut law. Our overtime laws and regulations have not adopted a definition similar to the one in the interpretive bulletin. And our overtime laws use the term in a manner that is inconsistent with the defendants' interpretation. Specifically, § 31-76c provides that "[n]o employer . . . shall employ any of his employees *for a workweek longer than forty hours* . . . ." (Emphasis added.) This reference to "workweek" clearly refers to the hours an employee has worked in the week and not to a fixed weeklong period.[8]

Moreover, the wage order, if read in light of the defendants' interpretation of workweek—i.e., a fixed weeklong period—would make no sense. Applied literally, the defendants' interpretation would require employers to divide "by the number of hours in [a weeklong period]"; Regs., Conn. State Agencies § 31-62-D4; which is 168 hours and not the actual number of hours worked, as the defendants argue. This would result in an absurdly minuscule regular rate. The defendants obviously do not advocate for this result. Rather, the defendants' interpretation would make sense only if the wage order were rewritten to require the employer to divide the employee's total earnings by the number of hours *worked* in the usual work week, which is the phrasing used in the provision of the federal bulletin relied on the defendants but not in the wage order. See 29 C.F.R. § 778.118 (2016) ("the total [pay] is divided by the total

number of hours *worked* in the workweek" [emphasis added]). Moreover, the defendants' interpretation would render the term "usual" superfluous, a result we must avoid whenever possible. See, e.g., *Connecticut Energy Marketers Assn.* v. *Dept. of Energy & Environmental Protection*, 324 Conn. 362, 377–78, 152 A.3d 509 (2016). If "workweek" referred to a fixed and unvarying period of seven days or 168 hours, there would be no need to refer to the number of hours in the "usual" workweek because all workweeks would have the same number of hours. We thus conclude that the defendants' suggested interpretation is not a reasonable one that the text supports.

Apart from their interpretation of the wage order's text, the defendants also argue that the legislature considered banning use of the fluctuating method for all employees subject to overtime law and did not do so, indicating that it intended to allow its use in Connecticut. They point to the legislative history behind the regular rate calculation for delivery drivers and sales merchandisers in § 31-76b (1). The defendants argue that, in earlier drafts, the legislature considered adopting a specific calculation for all employees that would have curtailed use of the fluctuating method but ultimately chose to limit the reach of the new calculation to only delivery drivers and sales merchandisers. Because we consider the meaning of the wage order and the statutes governing overtime to be plain and unambiguous, however, we have no justification for considering this extratextual evidence. See General Statutes § 1-2z.

The defendants also assert that the department views Connecticut law as permitting use of the fluctuating method. They observe that there is no record of any enforcement action by the department to preclude use of the fluctuating method by mercantile employers, indicating that the department interprets the wage laws to allow its use. The defendants thus suggest that we should defer to this presumptive interpretation, but such deference is not warranted in the present case. Although we will, in certain circumstances, defer to an agency's interpretation of statutes and its own regulations, we do so only if the agency interpretation is adopted pursuant to its rule-making process or through formal adjudication. See, e.g., *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 610 n.19. The absence of enforcement action by the agency, without more, does not establish an official agency interpretation calling for judicial deference. See id. In the present case, the parties have not directed us to any formal interpretation by the department, and we are aware of none.[9]

We therefore conclude that, for employees paid in whole or in part with commissions, the plain meaning of the wage order requires mercantile employers to determine an employee's regular hourly rate for the

purpose of calculating overtime by dividing the employee's weekly pay by the hours the employee usually works in a week.[10] The employee must receive at least one and one-half times this regular hourly rate of pay for each overtime hour worked, taking into consideration the amount of pay the employee already received as actual, straight time pay.[11] The wage order's command to use a divide by usual hours method therefore precludes use of the fluctuating method's divide by actual hours method, except, of course, when an employee's actual hours match his usual hours.

## IV

In sum, we conclude that, although Connecticut's wage laws do not preclude use of the fluctuating method, the plain meaning of the text in the wage order does.

We answer the certified question, "No."

No costs shall be taxed in this court to any party.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** August 17, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] To be consistent with the spelling of the word in the eleventh edition of Merriam-Webster's Collegiate Dictionary, we spell the term "workweek" throughout this opinion as one word unless it appears as two words in quoted material. There is no substantive difference between "workweek" and "work week" for purposes of our analysis.

[2] The plaintiffs invoked the District Court's diversity jurisdiction. See 28 U.S.C. § 1332 (a) (2012). The plaintiffs did not assert any claims under federal law.

[3] Our reference to Connecticut wage laws includes the provisions in chapter 558 of the General Statutes.

[4] Wage orders are essentially agency regulations, and we interpret them as such. They were originally promulgated by the department pursuant to statutory authority allowing wage boards to set fair minimum wage and hour requirements for various trades. See generally General Statutes (Rev. to 2013) §§ 31-61 through 31-65. Those requirements were then promulgated as regulations by the department. The statutes authorizing the use of wage boards to set minimum wages have since been repealed; Public Acts 2015, No. 15-127, § 5; Public Acts 2013, No. 13-140, § 22; and this power now resides with the Commissioner of Labor. See General Statutes § 31-60 (b). Although the wage board procedure has been eliminated, the wage order at issue in this case has not been rescinded by the legislature or the department, and remains in effect. See Regs., Conn. State Agencies § 31-62-D1 et seq.; see also General Statutes § 31-68 (a) (authorizing cause of action for employer's violation of any wage order). We interpret the wage order in the same manner we would any other agency regulation. See generally *Amaral Bros., Inc.* v. *Dept. of Labor*, 325 Conn. 72, 79–80, 155 A.3d 1255 (2017) (interpreting wage order governing restaurant trade in same manner as agency regulation).

[5] We have slightly rephrased the certified question for clarity. We have changed an abbreviation that the District Court used for the fluctuating method. In addition, we have substituted "Connecticut wage laws; see General Statutes § 31-58 et seq." for the Connecticut Minimum Wage Act, which appeared in the District Court's certification order. Our General Statutes do not designate any of its provisions as comprising such an act. The District Court did not provide a citation for this act, but a number of cases from the District of Connecticut; e.g., *Tapia* v. *Mateo*, 96 F. Supp. 3d 1, 2 (D. Conn. 2015); cite to the Connecticut Minimum Wage Act as General Statutes § 31-58 et seq. Accordingly, we have used this citation in our revision of the certified question.

[6] Although we will, in certain circumstances, defer to an agency's official

interpretation of a regulation; see, e.g., *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 610 n.19, 89 A.3d 841 (2014); as we explain in part III B of this opinion, the parties have not provided us with any such official interpretation to defer to in the present case.

[7] Section 31-62-D8 of the Regulations of Connecticut State Agencies requires employers to keep records concerning each employee who is not exempt from overtime pay that indicate the employee's name, address, proof of age for minor employees, occupation, wages, and daily and weekly hours worked.

[8] Other labor statutes also use "workweek" in a manner that would be inconsistent with the defendants' interpretation. For example, General Statutes § 31-12 (c) governs labor of minors and provides procedures for establishing "a work week of less than five days" for these employees. The General Statutes contain other similar examples. See, e.g., General Statutes § 31-76b (1) (defining "regular rate" and referencing the "maximum workweek" allowed by overtime law); General Statutes § 31-76e (permitting collective bargaining agreements to require employees to work "a workweek in excess of the maximum workweek applicable to such employee" as long as they receive overtime pay); General Statutes § 31-76f (governing payment for piece-rate employees who work "a workweek in excess of the maximum workweek applicable to such employee"); General Statutes § 31-362d (defining "minijob" to refer to "a job with a maximum work week of twenty-five hours per week"); see also General Statutes § 5-245 (a) (governing compensation for state employees who work more hours than their "regular, established workweek"); General Statutes § 5-246 (a) (1) (governing compensation for any state police member or officer "who performs work . . . in addition to the hours of his regular workweek"); General Statutes § 7-292 (a) (permitting municipalities to "adopt an average work week of forty hours" for police officers); General Statutes § 7-293 (setting "average work week of not more than forty hours" for police officers); General Statutes § 7-304 (a) (allowing municipalities to adopt "an average work week of fifty-six hours" for firefighters); General Statutes § 7-305 (setting maximum "average work week of not more than fifty-six hours" for firefighters); General Statutes § 7-460c (allowing compensatory time for municipal employees "for each hour worked in excess of the maximum workweek of such employees").

In addition, other provisions in the wage order at issue and other department regulations are inconsistent with the defendants' interpretation. In stating the one and one-half times overtime pay requirement for mercantile employees, the wage order requires that "[n]ot less than one and one-half times the employee's regular hourly rate shall be paid for *all hours in excess of forty in any work week*." (Emphasis added.) Regs., Conn. State Agencies § 31-62-D2 (c). Similarly, another department regulation governs the filing of apprenticeship applications for employees who intend to work "a *substantially shorter work week* than is prevailing in the industry." (Emphasis added.) Regs., Conn. State Agencies § 31-51d-3 (b).

[9] During our research, we discovered remarks from a department representative to a legislative committee indicating that the fluctuating method was permitted under current law. The remarks were made while the legislature considered adopting the formula for calculating the regular rate of certain delivery drivers and sales merchandisers. See General Statutes § 31-76b (1). The department representative testified concerning an earlier version of the bill, indicating that an employer's use of the fluctuating method was lawful, and stating, "certainly we'd be happy to speak to the fact that what is being done presently is not outside of the law. If it was, [the department] would have been doing something about it." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 3, 2003 Sess., p. 992, remarks of John McCarthy, Connecticut Department of Labor Representative.

The parties have not relied on these remarks,, and they have not impacted our interpretation of the wage order. The representative did not provide any analysis or explanation for his opinion, or indicate whether he was referencing federal or state law, or both. Nor did he specifically mention the mercantile wage order or whether it allowed the fluctuating method. Even if we were to assume his opinion related to the wage order, we do not accord deference to an agency interpretation that is not adopted formally through the agency's rule-making process or adjudicative procedure. See, e.g., *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 608–11 and n.19 (no deference given to department interpretation expressed in guidebook established for employers and employees). In addition, we are not aware of any authority that would justify our reliance on an agency representative's remarks to

the legislature to modify the plain meaning of a previously promulgated agency regulation. In fact, we ordinarily apply a presumption against finding an implicit repeal or modification of a regulation. See *Amaral Bros.*, *Inc.* v. *Dept. of Labor*, 325 Conn. 72, 85, 155 A.3d 1255 (2017).

[10] In the present case, the plaintiffs claim their usual work week was forty hours. This presents a question of fact for the District Court to address.

[11] Here is an illustration of this calculation. Suppose an employee who usually works forty hours per week actually worked fifty hours in a week, and earned $400 base pay, plus an additional $100 in commissions, for a total weekly pay of $500. In this scenario, the employee's regular hourly rate for the purpose of calculating overtime is $12.50 per hour ($500/40 usual hours). This differs from his actual rate of pay, which was $10 per hour ($500/50 actual hours). The employee must be compensated at least $18.75 for each overtime hour worked ($12.50 x 1.5). Because the employer has already paid the employee at a rate of $10 for each hour worked, including overtime hours, the employee needs an additional $8.75 for each overtime hour to bring him to $18.75 per hour for each overtime hour. His additional overtime pay is $87.50 ($8.75 x 10 hours of overtime).

---