IN RE CLAUDIA F. ET AL.*
(AC 25670)

Dranginis, Flynn and Harper, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 29, 2005—officially released January 24, 2006

*Roseann C. Canny,* for the appellant (respondent mother).

*Benjamin Zivyon,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, *Susan T. Pearlman,* assistant attorney general, and *Jill Lacedonia,* law student intern, for the appellee (petitioner).

*Paul Melocowsky,* for the minor children.

*Opinion*

FLYNN, J. The respondent mother[1] appeals from the judgments of the trial court adjudicating three of her children neglected and committing them to the care, custody and guardianship of the petitioner, the commissioner of the department of children and families (commissioner). The respondent makes several claims on

---

[1] The respondent father has not appealed from the judgments of neglect. We refer in this opinion to the respondent mother as the respondent.

appeal,[2] none of which is reviewable because we conclude that the appeal is moot.

The facts relevant to the disposition of this appeal are as follows. On October 16, 2003, the commissioner filed neglect petitions on behalf of the respondent's three minor children. On February 27, 2004, the commissioner applied for and received an order of temporary custody. On March 15, 2004, at the request of the respondent, the court conducted a hearing pursuant to General Statutes § 46b-129 (f), after which it sustained the order of temporary custody. The respondent did not appeal from that judgment.

On May 21, 2004, the court issued its decision on the record, adjudicating the children neglected and committing them to the care, custody and guardianship of the commissioner. The respondent filed an appeal from that adjudication on July 27, 2004. More than three months after filing her appeal, on November 8, 2004, the respondent consented to the termination of her parental rights, and the court appointed the commissioner as the statutory parent of the children. A few days after the respondent's parental rights were voluntarily terminated, she gave birth to another child, who is not the subject of these proceedings.

"Since mootness implicates subject matter jurisdiction . . . [and] raises a question of law . . . our review of that issue is plenary." (Citations omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 865, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of

---

[2] On appeal the respondent claims that (1) the court improperly denied her motion to strike the neglect/uncared for petitions and (2) there was insufficient evidence to support an adjudication of neglect.

the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754, 826 A.2d 156 (2003). Nevertheless, "the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Whe[n] there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) *Chimblo* v. *Monahan*, 265 Conn. 650, 655–56, 829 A.2d 841 (2003).

The petitioner argues that the respondent's voluntary termination of her parental rights renders this appeal moot. We agree.

In this case, an actual controversy no longer exists, and there is no practical relief that can be granted. During the pendency of the appeal, the respondent voluntarily consented to the termination of her parental rights of three of her children. As a result, custody of those children could not be returned to her even if she were to prevail on appeal. The respondent concedes

that resolution of her appeal could provide no practical relief. See *In re Candace H.*, 259 Conn. 523, 526, 790 A.2d 1164 (2002). Nevertheless, she contends that this case fits within the collateral consequences exception to the mootness doctrine.

The respondent specifically claims that as a result of the underlying finding of neglect, it is reasonably likely that she is listed on the child abuse registry pursuant to General Statutes § 17a-101k and this appeal provides the only recourse for having her name expunged from that registry. She further argues that inclusion on the registry is stigmatizing, that her records could be obtained by a state agency pursuant to General Statutes § 17a-28 (f) and that ultimately such information could enter the public domain.

A judgment of neglect is not directed at the respondent as a parent, but rather is directed at the condition of the children, namely, that they are neglected. *In re Elisabeth H.*, 45 Conn. App. 508, 511, 696 A.2d 1291, cert. denied, 243 Conn. 903, 701 A.2d 328 (1997), cert. denied, 523 U.S. 1137, 118 S. Ct. 1840, 140 L. Ed. 2d 1091 (1998). Further, any concern about the dissemination of the records of the department of children and families (department) under § 17a-28 will not be remedied by a reversal of the finding of neglect because the department's record of its concerns regarding medical neglect, domestic violence and unresolved mental health issues will still be in the records because the respondent did not appeal from the order of temporary custody.

The respondent relies heavily on *Williams v. Ragalia*, 261 Conn. 219, 802 A.2d 778 (2002), to support her claim of collateral consequences. That case is distinguishable from the present case. *Williams* involved an appeal from a decision by the commissioner revoking the plaintiff's special study foster care license. Although the plaintiff adopted the children for whom the license had

been granted, our Supreme Court held that the appeal from the revocation of the license was not moot due to the totality of the possible consequences, namely, that the plaintiff would want to become a foster parent at some time in the future and the revocation would be held against her in subsequent proceedings. The court reasoned that the revocation of a foster care license for cause stigmatizes the plaintiff as having been found to be an unfit caregiver. Such a finding directly implicates the holder of the license, whereas in this case, a finding of neglect is not directed against the parents. See *In re Elisabeth H.*, supra, 45 Conn. App. 512.

The respondent also complains that the department has required her to sign a service agreement indicating that she will participate in services with regard to her new child. She argues that the record of her prior adjudication of neglect will continue to affect any further proceedings or involvement by the department with respect to her new child or any other children she may have in the future. On the basis of the unappealed order of temporary custody and subsequent voluntary termination of the respondent's parental rights with regard to three of her children, the department is on notice that there are concerns with the respondent's parenting ability. There were findings concerning parental neglect as a result of the order of temporary custody from which the respondent did not appeal. The evidence admitted at the neglect proceeding was essentially the same evidence admitted at the hearing on the order of temporary custody. At the neglect proceeding, the petitioner offered into evidence the transcripts from the hearing on the order of temporary custody and then rested. The respondent's counsel called the respondent briefly as a witness in order to testify as to what had occurred since she was last in court. The respondent testified regarding her feelings on the best placement

for her children and also testified about her behavioral improvements since the hearing.

The respondent has failed to show how the court's finding of neglect would produce collateral consequences above and beyond the consequences that could flow from the order of temporary custody.[3]

The appeal is dismissed.

In this opinion the other judges concurred.

---

[3] This case is distinguishable from *In re Allison G.*, 276 Conn. 146, 883 A.2d 1226 (2005). In that case, the commissioner claimed that the child was both neglected and uncared for. The respondents agreed to admit only that the child was uncared for, but not that she had been subjected to sexual abuse because of their neglect. The court dismissed the neglect petition, holding that in light of the stipulation that the child was uncared for and the parents' agreement to commit the child to the commissioner, the neglect count was moot. The Supreme Court disagreed with the mootness holding. It reasoned that the commissioner currently claimed that it had not agreed to dismissal, was aggrieved and entitled to offer evidence establishing neglect, which if proved, might bear on whether reunification with the parents was appropriate or whether termination of parental rights was appropriate.