******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## MATTHEW C. *v.* COMMISSIONER OF CHILDREN AND FAMILIES*

### (AC 40957)

Lavine, Keller and Beach, Js.

*Syllabus*

The plaintiff father appealed to the trial court from the decision by the defendant, the Commissioner of Children and Families, denying him a hearing to challenge the defendant's decision to substantiate allegations that he neglected his two minor children. The trial court rendered judgment dismissing the appeal, from which the plaintiff appealed to this court. On appeal, he claimed, inter alia, that the trial court improperly declined to equate a certain provision (§ 22-12-4) of the Policy Manual of the Department of Children and Families, as derived from a department regulation (§ 17a-101k-7), with the doctrine of collateral estoppel. *Held*:

1. The plaintiff could not prevail on his claim that the trial court improperly decided his administrative appeal on a basis not decided by the defendant's administrative hearing officer, which was based on his claim that because the hearing officer dismissed his request for a substantiation hearing only on the basis of collateral estoppel, the court was not permitted to consider the applicability of § 22-12-4 of the policy manual: the issue of whether § 22-12-4 of the policy manual and the department regulation precluded the plaintiff from a hearing was clearly in the administrative record, the court, which questioned, at oral argument, as a matter of law, the applicability of collateral estoppel in light of the existence of the department regulation and policy manual provision that were applicable to the case, did not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, there was no support for the proposition that the trial court was limited to considering the same conclusions of law that the administrative body reached, and it was evident from the record that the court determined that the application of collateral estoppel by the hearing officer constituted legal error, not on the basis that the hearing officer's collateral estoppel analysis was erroneous, but because the hearing officer applied the common-law doctrine to the case instead of the relevant department regulation and policy manual provision; moreover, the court properly determined that the department regulation and the policy manual provision were not substantively identical to the common-law doctrine of collateral estoppel and that it was proper to apply them, and, under the facts of this case, pursuant thereto the court was permitted to dismiss the appeal.

2. The trial court having properly determined that the department regulation and the policy manual provision were not substantively identical to the common-law doctrine of collateral estoppel, it properly applied the applicable regulation rather than the common-law doctrine in evaluating the plaintiff's request for a hearing.

3. The plaintiff could not prevail on his claim that the trial court improperly dismissed his request for a substantiation hearing; although a judgment adjudicating neglect of a child in and of itself concerns only the status of the child, the subordinate facts found by the juvenile court, which were clearly articulated by the hearing officer, demonstrated that the juvenile court made a factual determination that the plaintiff was responsible for the neglect of his children, which precluded him from being afforded a substantiation hearing under the department regulation and policy manual.

4. The dismissal of the plaintiff's request for a substantiation hearing pursuant to the department regulation did not violate the plaintiff's right to fundamental fairness; through the course of the hearing before the juvenile court on both an order for temporary custody and the neglect petitions regarding the plaintiff's children, the plaintiff was provided with the protections that fundamental fairness dictate, as he was on notice that the factual allegations in support of both the applications for orders of temporary custody and neglect petitions were premised

almost exclusively on his conduct, the record demonstrated that the plaintiff was represented by counsel, who defended his position at a two day hearing, and the plaintiff testified at the hearing, called witnesses, presented his own evidence and had his counsel cross-examine other witnesses.

Argued November 27, 2018—officially released March 26, 2019

*Procedural History*

Administrative appeal from the decision by the defendant denying the plaintiff's request for a hearing regarding the decision by the defendant to substantiate allegations that the plaintiff neglected his two minor children, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Campbell D. Barrett*, with whom were *Johanna S. Katz* and, on the brief, *Jon T. Kukucka*, for the appellant (plaintiff).

*Daniel M. Salton*, assistant attorney general, with whom, on the brief, were *Benjamin Zivyon*, assistant attorney general, and *George Jepsen*, former attorney general, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Matthew C., appeals from the judgment of the trial court dismissing his administrative appeal following a decision by the defendant, the Commissioner of Children and Families, denying him a hearing to challenge the defendant's decision to substantiate allegations that he neglected his two minor children. The plaintiff avers that the trial court erred by (1) deciding the plaintiff's appeal on a basis not decided by the defendant's administrative hearing officer, (2) declining to equate § 22-12-4 of the policy manual (policy manual) of the Department of Children and Families (department),[1] as derived from § 17a-101k-7 of the department's regulations,[2] with the doctrine of collateral estoppel, (3) dismissing his appeal from the denial of his request for a substantiation hearing irrespective of whether § 22-12-4 of the policy manual and collateral estoppel are equivalent, and (4) violating his right to fundamental fairness by dismissing his appeal after denying him a substantiation hearing. We affirm the judgment of the trial court.

The facts and procedural history of the case are as follows. The plaintiff is the father of two minor children, B and E. He became legally involved with the department on September 16, 2015, when neglect petitions were filed by the defendant pursuant to General Statutes § 46b-129, alleging that B and E, who were twelve and ten years of age at the time, had been neglected pursuant to General Statutes (Rev. to 2015) § 46b-120.[3] On the same date, the Superior Court for Juvenile Matters granted applications filed by the defendant seeking ex parte temporary custody orders and vested temporary custody of the children ex parte in their mother, pending a further hearing, after finding that the children were in immediate physical danger from their surroundings, and that continuation in those surroundings was contrary to their welfare.[4]

The summary of facts accompanying the neglect petitions alleged, inter alia, that the plaintiff had demonstrated a pattern of coercive, controlling, and abusive behavior toward the children's mother, to which the children were exposed; that the children had witnessed their mother being screamed at, demeaned, and threatened by the plaintiff; that B had mimicked the plaintiff's behavior in that he engaged in verbally and physically aggressive behavior toward his mother and sister; that B was hospitalized after he damaged his mother's car with a hammer or ax, broke a window, and set four small fires outside the home; that the plaintiff was unwilling to accept voluntary services in order to help B with his mood disorder diagnosis; and that E was directly affected by the plaintiff's actions in that she was fearful in the home, had emotional outbursts, and had become dysregulated with her emotions.

The juvenile court, *Hon. Barbara M. Quinn,* judge trial referee, held a consolidated hearing on October 2 and 19, 2015, on the applications for orders of temporary custody and on the adjudicatory phase of each of the neglect petitions, which the plaintiff, through his counsel, contested.[5] On November 3, 2015, the juvenile court rendered its decision concluding that the allegations of the affidavit seeking the orders of temporary custody and the grounds for the neglect alleged in the neglect petitions had been proven. The court sustained the orders of temporary custody and adjudicated both of the children neglected on the basis that they were being denied proper care and attention, physically, educationally, emotionally or morally, and were being permitted to live under conditions, circumstances or associations injurious to their well-being.

After being notified that the defendant substantiated allegations that the plaintiff was responsible for the neglect of his children, the plaintiff filed a request for an administrative hearing on February 18, 2016.[6] On April 4, 2016, the department moved to dismiss the plaintiff's appeal from the substantiation pursuant to the department regulation and § 22-12-4 of the policy manual because the juvenile court already had factually determined that the plaintiff was the perpetrator of the neglect. On April 19, 2016, the plaintiff filed an objection to the motion to dismiss arguing that § 22-12-4 did not apply because there was no determination by the juvenile court that the plaintiff was responsible for the abuse or neglect of his children. He went on to argue that the motion "should also be denied because the policy behind the denial [of hearing] clause of § 22-12-4 does not apply to the facts of the present case." In particular, he argued that § 22-12-4 was based on the common-law doctrine of collateral estoppel and that "the doctrine of collateral estoppel, or the [department] equivalent, § 22-12-4, does not apply because," inter alia, the issue of whether the plaintiff was the perpetrator of the neglect was not actually litigated.

After receiving the motion to dismiss and the objection to the motion, the hearing officer required that the department "submit the [s]ummary of [f]acts submitted to the [j]uvenile [c]ourt in the neglect proceedings" and ordered the parties to "submit a brief on the issue of whether the [plaintiff] is collaterally estopped from proceeding with his substantiation hearing if the issue was actually litigated and necessarily determined in the prior action."[7] On September 26, 2016, the hearing officer issued a written decision granting the department's motion to dismiss, denying the plaintiff's request for a substantiation hearing on the basis of collateral estoppel. In her decision, the hearing officer indicated that the "issue of whether the [plaintiff] has emotionally or physically neglected [his] children has been actually decided . . . in the juvenile court proceedings, and,

therefore is subject to collateral estoppel."

On November 9, 2016, the plaintiff filed an administrative appeal pursuant to General Statutes § 4-183. The parties submitted briefs to the court and, on August 1, 2017, the court, *Hon. Henry S. Cohn*, judge trial referee, held oral argument on the merits. During argument, the court expressed some skepticism about whether collateral estoppel and § 22-12-4 of the policy manual were substantively identical and whether it was proper for the hearing officer to have applied collateral estoppel instead of the policy manual provision directly related to this matter. Accordingly, with the consent of the parties, the court ordered the parties to provide supplemental briefs pursuant to General Statutes § 4-183 (g) on the issue of whether § 22-12-4 of the policy manual was identical to collateral estoppel and whether § 22-12-4 provided an independent administrative basis for dismissal of the request for a substantiation hearing. On October 2, 2017, the court issued a memorandum of decision in which it concluded that although the policy manual provision and the doctrine of collateral estoppel were similar in some respects, "the two concepts are not identical." On the basis of the department regulation and § 22-12-4 of the policy manual, the court concluded that the dismissal of the administrative appeal was proper. This appeal followed. Additional facts will be set forth as necessary.

We commence our discussion by setting forth the standard of review. Judicial review of an administrative decision is governed by statute. See *Celentano* v. *Rocque*, 282 Conn. 645, 652, 923 A.2d 709 (2007). When reviewing the trial court's decision, we seek to determine whether that decision is in harmony with the Uniform Administrative Procedure Act (act), General Statutes § 4-166 et seq. See *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, 140 Conn. App. 754, 766, 60 A.3d 297, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013). With regard to questions of fact, our cases have made clear that review of administrative agency decisions is limited and "requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Internal quotation marks omitted.) *Matthew M.* v. *Dept. of Children & Families*, 143 Conn. App. 813, 824, 71 A.3d 603 (2013).

Our Supreme Court also has noted that "[j]udicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse

of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 800, 955 A.2d 15 (2008). "Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Internal quotation marks omitted.) *Palomba-Bourke* v. *Commissioner of Social Services*, 312 Conn. 196, 203, 92 A.3d 932 (2014). Thus, when an agency's interpretation has not been "subjected to judicial scrutiny or consistently applied by the agency over a long period of time, our review is de novo." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 283, 77 A.3d 121 (2013).

I

We first address the plaintiff's claim that the trial court erred by deciding the plaintiff's appeal on a basis not decided by the hearing officer. In his view, because judicial review under the act " 'is very restricted' " and because the hearing officer dismissed his request for a substantiation hearing only on the basis of collateral estoppel, the court was not permitted to determine whether § 22-12-4 of the policy manual was the applicable law to govern the present matter. In other words, the plaintiff claims that the trial court was not permitted to consider the applicability of the policy manual and could only evaluate the correctness of the collateral estoppel analysis undertaken by the hearing officer. We disagree.

To support his argument, the plaintiff contends that *Dortenzio* v. *Freedom of Information Commission*, 42 Conn. App. 402, 679 A.2d 978 (1996), is determinative. In *Dortenzio*, this court addressed a claim of whether the trial court improperly substituted its judgment for that of the Freedom of Information Commission (commission). Id., 407. The commission argued that the trial court "failed to confine its review of the [commission's] decision to the issues raised and the findings in the administrative record." Id. In reversing the trial court's judgment, this court concluded that the trial court "needlessly enlarged the issue on appeal . . . by examining . . . an argument not found in the administrative record . . . [that was] neither raised before nor addressed by the [commission]." (Citations omitted;

internal quotation marks omitted.) Id., 409.

The present case is easily distinguishable. The issue of whether § 22-12-4 of the policy manual and the department regulation precluded the plaintiff from a hearing was clearly in the administrative record—the department's sole argument for its motion to dismiss was that § 22-12-4 of the policy manual and the regulation precluded the plaintiff from obtaining a substantiation hearing. The plaintiff then argued in his opposition motion that § 22-12-4 of the policy manual did not apply and, by relying on Superior Court authority, equated it to the doctrine of collateral estoppel. After receiving the motion to dismiss and the opposition to the motion, the hearing officer appears also to have equated § 22-12-4 of the policy manual and the doctrine of collateral estoppel because she requested briefing solely on whether the plaintiff was collaterally estopped from receiving a substantiation hearing. The hearing officer ultimately dismissed the appeal on the basis of collateral estoppel. On appeal in the Superior Court, the court, rather than addressing whether the hearing officer's analysis of collateral estoppel was correct, determined that the applicable department policy manual provision, as authorized by the department regulation, was the proper basis for denying the plaintiff's request for a substantiation hearing.

We recognize and agree with the plaintiff that the act limits judicial review of agency decisions but disagree with him as to the extent it does so with respect to questions of law. The plaintiff avers that the trial court's decision dismissing his appeal pursuant to the policy manual provision and its failure to consider the issue under the doctrine of collateral estoppel "was error in light of the clear precedent that a trial court may not retry the case or substitute its own judgment for that of the agency." We reject this argument for several reasons.

First, the act makes clear that a "court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." General Statutes § 4-183 (j). On the basis of our review of the record, it is clear that the court did not do so. The court did not attempt to substitute or retry the case with respect to any questions of fact found by the hearing officer. Instead, it questioned at oral argument, as a matter of law, the applicability of collateral estoppel in light of the existence of a department regulation and policy manual provision that were applicable to the case. The court also went as far as to note in its memorandum of decision that the court had "raised a legal argument, the effect of the policy manual, and is not seeking to overturn a factual finding made by the hearing officer."

Second, our case law provides that "[c]onclusions of law reached by the administrative agency must stand

if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 379, 194 A.3d 759 (2018); *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 318 Conn. 769, 781, 122 A.3d 1217 (2015). These cases, however, do not stand for the proposition that incorrect conclusions of law must stand. As the defendant aptly points out in her appellate brief, the plaintiff has not cited to any authority for his contention that, as part of the limited nature of administrative review, the trial court is always limited to considering the same conclusions of law that the administrative body reached. Contrary to that position, § 4-183 (j) allows for a court to modify the agency decision or remand the case for further proceedings if "the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) *affected by other error of law*; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." (Emphasis added.)

It is evident from the record that the court determined that the application of collateral estoppel by the hearing officer constituted legal error, not on the basis that the hearing officer's collateral estoppel analysis was erroneous, but because the hearing officer applied the common-law doctrine to the case instead of the relevant department regulation and policy manual provision. During a colloquy with counsel at oral argument, the court stated: "You've got a policy manual. You enforce the policy manual." The court also made clear that it agreed with the defendant's description that the regulation is "an administrative rule about an administrative designation and the administrative body of law applies." It indicated that "the law is clear that if a case is . . . an administrative appeal; I'm not bound by the legal reasoning of the hearing officer. I can decide whether or not, as a matter of law whether this was the right outcome or not." The court then gave the parties an opportunity to brief the issue. After reviewing those briefs, the court set forth in its memorandum of decision that the doctrine of collateral estoppel and § 22-12-4 of the policy manual were not identical. Although the court ultimately agreed with the hearing officer's conclusion that the appeal should be dismissed, it determined dismissal was proper because the department regulation and policy manual did not entitle the plaintiff to a hear-

ing. We agree with the court that the department regulation and the policy manual provision are not substantively identical to the common-law doctrine of collateral estoppel, and that it was proper to apply the regulation and policy manual provision. See part II of this opinion. On the basis of our review of the record and the relevant authorities, we conclude that the facts of this case permitted the court to dismiss the appeal pursuant to the department regulation and the policy manual.

II

The plaintiff next avers that even if this court finds that the trial court correctly considered the policy manual when it dismissed his appeal, that this court should reverse the trial court's decision because it erred when it held that § 22-12-4 of the policy manual and the doctrine of collateral estoppel were not substantively the same. The defendant argues, however, that if we were to conclude that the regulation and the common-law doctrine of collateral estoppel are the same, we would ultimately be impugning common-law principles into the regulation and would be stepping far beyond the constraints of General Statutes § 1-2z. We agree with the defendant.

The plaintiff's argument primarily relies on the unpublished Superior Court decision of *Lang* v. *Dept. of Children & Families*, Superior Court, judicial district of New Britain, Docket No. CV-07-4014311-S (July 18, 2008), which, prior to the underlying proceeding, was authored by the trial court judge in this case. By grasping upon language in *Lang* where the court stated that the facts of the case "hardly justif[y] the conclusion that applying collateral estoppel, or the [department] equivalent, § 22-12-4, is warranted," the plaintiff appears to argue that this language is a binding conclusion that the two concepts are substantively identical.[8] It is unclear, however, how this trial level decision binds us to conclude the same. Because we do not have the benefit of either a prior judicial or time-tested agency construction of whether the policy manual and regulation are substantively the same as the doctrine of collateral estoppel, we construe in a plenary fashion whether § 22-12-4 of the policy manual and its regulatory counterpart, § 17a-101k-7, are substantively the same as the common-law doctrine of collateral estoppel. See *Williams* v. *General Nutrition Centers, Inc.*, 326 Conn. 651, 657, 166 A.3d 625 (2017).

We begin our interpretation of the regulation by looking to its plain meaning. Id. ("because regulations have the same force and effect as statutes, we interpret both using the plain meaning rule"); see General Statutes § 1-2z. Section 17a-101k-7 (i) of the Regulations of Connecticut State Agencies provides: "A request for an administrative hearing shall be denied by the department when a civil court proceeding has been finally

disposed with a factual determination by the court that the identified person committed the act of child abuse or neglect that is the subject of the substantiation." A plain reading of the regulation clearly delineates the circumstances in which the agency may deny an individual's request for an administrative hearing. We have not found, nor has the plaintiff demonstrated, how the regulation can be susceptible to more than one reasonable interpretation. Accordingly, we conclude that the regulation is plain and unambiguous, which means we need not look to extratextual evidence to discern its meaning. See General Statutes § 1-2z; *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150–51, 12 A.3d 948 (2011) ("The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." [Internal quotation marks omitted.]).

Although the plaintiff contends that the regulation, which was promulgated by the defendant, and the common-law doctrine of collateral estoppel are substantively identical, the regulation is conspicuously devoid of the requirements of common-law collateral estoppel.[9] For example, there is no language in the regulation that indicates that the factual issues presented by both cases must be identical, or that they must have been necessary for the outcome of the prior civil case, or even that the identified person must have been a party to the prior proceeding. Additionally, the regulation does not indicate that the provision was intended to track the common-law doctrine of collateral estoppel.

While it appears that the two principles are similar in that they determine the preclusive effect that a prior proceeding has on a subsequent action, they are by no means identical. Nonetheless, we agree with the trial court that the regulation, like the doctrine of collateral estoppel, requires that there be a full opportunity for the respondent to be heard. This requirement ensures fairness. See part IV of this opinion. But to conclude that the regulation and the doctrine of collateral estoppel are substantively identical would require us to read language into the regulation that does not exist. We decline to do so. We, therefore, conclude that the court properly determined that the department regulation and the policy manual are not substantively identical to the common-law doctrine of collateral estoppel, and that the trial court properly applied the applicable regulation rather than the common-law doctrine in evaluating the plaintiff's request for a hearing.

III

The plaintiff next argues that, irrespective of whether § 22-12-4 of the policy manual and collateral estoppel are substantively identical, the court erred by dismissing his request for a substantiation hearing. In particular, he argues that, on the basis of this court's precedents, a trial court's finding of neglect is not directed against the parents but rather goes to the status of the children. For the reasons set forth herein, we disagree with the plaintiff.

We briefly set forth additional facts necessary for the disposition of this claim. After temporary custody was vested ex parte with the mother, the juvenile court held a consolidated hearing on the orders of temporary custody and the neglect petitions. On November 3, 2015, the juvenile court rendered its decision concluding that the allegations of the affidavit seeking the orders of temporary custody and the grounds for neglect that were alleged in the neglect petitions had been proven. The juvenile court sustained the order of temporary custody and adjudicated both of the children neglected on the basis of the grounds alleged.

The defendant substantiated the allegations that the plaintiff was responsible for the neglect of both his children and, on February 18, 2016, the plaintiff requested that the defendant provide him with a substantiation hearing. On September 26, 2016, the hearing officer rendered her final decision on whether the request for a substantiation hearing should be dismissed and concluded that the plaintiff, who was represented by counsel and had a full opportunity to be heard, was precluded from a hearing because the juvenile court had already ruled on the issue of the plaintiff's neglect. The hearing officer set forth the following facts: "The [juvenile court] rendered [its] decision on November 3, 2015. In the bench order, [the juvenile court] noted that the children were removed on September 16, 2015, after the [plaintiff] refused voluntary [department] services on [B's] behalf, and the mother indicated that she feared for her safety and that of the children. A temporary ex parte [order of] custody of both children was vested in the mother by the court on September 16.

"In [the juvenile court's] order, [it] concluded that 'the allegations in the affidavit seeking the order[s] of [temporary] custody [and] the neglect petition[s] have been proven. Specifically, the court finds that both children appear to have significant emotional disturbances, and at the time of their removal were being permitted to live under conditions injurious to their health and well-being; each was being denied the proper care and attention they required.'

"[The juvenile court] further concluded that 'the relationship between their parents had deteriorated to the point where the atmosphere was toxic for the children and their mother. [The plaintiff] exerted control over

the minutia of their home lives while expecting their mother to carry out the routine and daily duties with constant second guessing, criticism and much anger and yelling.'

"The [juvenile] court commented on the [plaintiff's] 'hostile and out of control behavior' noting that a video in evidence showing the [plaintiff] 'completely out of control' would lead 'any rational person' to be 'afraid under these circumstances, regardless of the provocation.' [The juvenile court] also noted that the text exchanges indicate that the [plaintiff] is 'unwilling to cede any respect to his wife and believes he is justified in the many small and major ways his coercive and threatening behavior inhibits her life and that of his children.'

"In [its] decision, [the juvenile court] noted that [B] has 'picked up [the plaintiff's] utter disregard of wife and mother, and so he yells at her and refuses to obey normal parental strictures' and that [E] 'is clearly suffering under this male regimen of terror.' [The juvenile court] noted that the [plaintiff] blocked the [In-Home Child and Adolescent Psychiatric Services (IICAPS)[10]] . . . for [B] in any way he could because 'such an intrusion into the family of which he believes himself to be the sovereign head was completely unacceptable to [the plaintiff].'

"[The juvenile court] concluded that '[b]ased on all the detailed and probative, credible evidence adduced at trial, only a small portion of which the court has just reviewed, the court finds at the time of the [order of temporary custody] the children were in immediate physical danger from their surroundings.' [The juvenile court] further adjudicated [B] and [E] 'as neglected under the [grounds] set forth in the petition.' [The juvenile court] also set forth that the [plaintiff's] access to the children shall be 'therapeutic access only until such time as the psychological evaluation ordered in this case shall be completed and further orders entered.' " (Footnotes added and omitted.)

The hearing officer also noted in her decision that the reasons for the neglect petitions, which were set forth in the summary of facts attached to each of the petitions, were based solely on the plaintiff's actions. The hearing officer set forth the summary of facts in her final decision and concluded that the plaintiff was collaterally estopped from receiving a substantiation hearing. The plaintiff appealed the decision to the Superior Court.

After proceedings before the trial court, *Hon. Henry S. Cohn*, judge trial referee, the court set forth its decision in an October 2, 2017 memorandum of decision. Therein, the court summarized the record, highlighted the summary of facts that accompanied the neglect petitions, and quoted the hearing officer's final decision.

The court concluded, inter alia, that "[s]ince the civil proceeding was held and concluded that the plaintiff was a perpetrator of child neglect, the question becomes whether he had the opportunity to state his position before [the juvenile court]. Since as the record . . . clearly shows, the [plaintiff] was present at the [juvenile court] trial that took place over two days, had an opportunity to testify fully, and to summarize his position, the exception to a hearing provided in the [department] regulation and policy manual apply in this matter. The hearing officer was correct in dismissing the plaintiff's request."[11]

The question before us is whether, under the unique circumstances of this case and pursuant to the department regulation, the plaintiff is precluded from receiving a substantiation hearing. To begin, § 17a-101k-7 (i) of the Regulations of Connecticut State Agencies provides: "A request for an administrative hearing shall be denied by the department when a civil court proceeding has been finally disposed with a factual determination by the court that the identified person committed the act of child abuse or neglect that is the subject of the substantiation."

The parties do not dispute that that the proceeding before the juvenile court was a "civil court proceeding." To be sure, this court has made clear that "[c]hild protection proceedings are civil matters." *In re Natalie J.*, 148 Conn. App. 193, 207, 83 A.3d 1278, cert. denied, 311 Conn. 930, 86 A.3d 1056 (2014); see Practice Book § 32a-2 (a). Nor do the parties dispute that the decision "finally disposed" of the matter.[12] The plaintiff contends only that our decisions in *In re Alba P.-V.*, 135 Conn. App. 744, 42 A.3d 393, cert. denied, 305 Conn. 917, 46 A.3d 170 (2012), and *In re Claudia F.*, 93 Conn. App. 343, 888 A.2d 1138, cert. denied, 277 Conn. 924, 895 A.2d 796 (2006), are determinative in that they hold that "a trial court's adjudication of a child as neglected does not foreclose a parent from proceeding with a substantiation hearing to determine that parent's culpability." He argues that these cases have concluded that adjudications of neglect are not findings about a particular individual's responsibility for the neglect but, rather, are directed to the status of the children.

In *In re Alba P.-V.*, the respondent mother appealed from the judgments of the trial court adjudicating two of her children neglected and ordering a six month period of protective supervision. *In re Alba P.-V.*, supra, 135 Conn. App. 745. This court dismissed the appeal as moot because the period of protective supervision had already passed. Id., 746–47. The mother argued that as a collateral consequence, dismissal of her case would foreclose her from challenging her placement on the central registry and the substantiations through the administrative process because, in her view, § 22-12-4 of the policy manual would preclude her from doing

so. Id., 752–54. The court ultimately rejected this argument by noting "that the court's adjudications of neglect challenged on appeal are not findings about the respondent, but are directed at the status of her children." Id., 754–55. In reaching this conclusion, the court cited to, inter alia, the following language in *In re Zamora S.*, 123 Conn. App. 103, 108, 998 A.2d 1279 (2010): "[A]n adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect." (Internal quotation marks omitted.) *In re Alba P.-V.*, supra, 749 n.4.

Additionally, in *In re Alba P.-V.*, this court noted that the respondent mother did not argue that there were subordinate factual findings in the record concerning her culpable conduct. Id., 755 n.14. To the contrary, the court determined that the respondent argued only "that the court's finding of neglect was improper because it reached only 'two factual conclusions—that there were prior substantiations and that [her daughter] was pregnant.'" Id.

In *In re Claudia F.*, the respondent mother appealed from the judgments of the trial court adjudicating three of her children neglected and committing them to the care, custody, and guardianship of the commissioner. *In re Claudia F.*, supra, 93 Conn. App. 344. The commissioner argued that the mother voluntarily terminated her parental rights, which rendered the appeal moot. Id., 346. The mother claimed specifically that her appeal was not moot because, as a result of the underlying finding of neglect, it was reasonably likely that she would be listed on the child abuse registry and that her appeal was "the only recourse for having her name expunged from that registry." Id., 347. The court noted that "[a] judgment of neglect is not directed at the [mother] as a parent, but rather is directed at the condition of the children, namely, that they are neglected." Id. The court further stated that "any concern [by the mother] about the dissemination of the records . . . will not be remedied by a reversal of the finding of neglect because the department's record of its concerns regarding medical neglect, domestic violence and unresolved mental health issues will still be in the records because the [mother] did not appeal from the order of temporary custody." Id. The applicability of the department regulation and policy manual was not an issue in the case.

The plaintiff appears to rely on these cases primarily for the proposition that "[a]n adjudication of neglect relates to the status of the child and is not *necessarily* premised on parental fault." (Emphasis added; internal quotation marks omitted.) *In re Zamora S.*, supra, 123 Conn. App. 108. While the plaintiff is correct in that a judgment adjudicating neglect of a child in and of itself

speaks only to the status of the child, the plaintiff seems to conflate an adjudication of neglect with the subordinate facts found by a court that give rise to that adjudication. Although a court is not required to determine who was responsible for the neglect in adjudicating neglect of a child; see General Statutes § 46b-129; that is not to say that a court's subordinate factual findings cannot clearly identify who is responsible.

In the present case, the defendant's summary of facts in each of the neglect petitions were based almost exclusively on allegations that the plaintiff was responsible for the children's neglect. The hearing officer made clear, and we agree, that the defendant "placed squarely before the court the issue of the [plaintiff's] conduct and findings on this issue were therefore necessary to the judgment." The hearing officer stated: "The court found specifically that the [plaintiff] 'exerted control over the minutia of their home lives while expecting their mother to carry out the routine and daily duties with constant second guessing, criticism and much anger and yelling' and 'hostile and out of control behavior' noting that a video in evidence showing the [plaintiff] 'completely out of control' would lead 'any rational person' to be 'afraid under these circumstances, regardless of the provocation.' . . . [The juvenile court] also noted that the text exchanges indicate that the [plaintiff] is 'unwilling to cede any respect to his wife and believes he is justified in the many small and major ways his coercive and threatening behavior inhibits her life and that of his children.' . . . [The juvenile court] found that the mother's 'attempt to set what are standard forms of discipline have consistently been undercut and countermanded by [the plaintiff].' . . . [The juvenile court] noted that it 'is apparent that [B] has picked up his father's utter disregard of wife and mother, and so yells at her and refused to obey normal parental strictures,' and that [E] is 'clearly suffering under this male regimen of terror.' . . . When the mother made efforts to secure voluntary services for [B's] mental health needs, the [plaintiff] felt that '[s]uch an intrusion into the family of which he believes himself to be the sovereign head was completely unacceptable to [the plaintiff].' . . . The [juvenile court's] decision and order clearly made the causal connection between the [plaintiff's] actions and how the children's emotional disturbance related to his actions." (Citations omitted.)

On the basis of our review of the findings by the juvenile court, which were clearly articulated by the hearing officer in her final decision, we conclude that the juvenile court made a factual determination that the plaintiff was responsible for the neglect of his children, which precluded him from being afforded a substantiation hearing under the department regulation and policy manual.

IV

The plaintiff, however, has one final arrow in his quiver. He argues that a denial of a substantiation hearing would violate his right to fundamental fairness. He argues that he was unable "to prepare knowingly and intelligently for a hearing on the issue of whether he [was] a perpetrator of neglect" because the issue of who was responsible for the neglect was not before the juvenile court. We disagree.

The question of whether the right to fundamental fairness has been violated in administrative proceedings is a question of law over which our review is plenary. *Recycling, Inc.* v. *Commissioner of Energy & Environmental Protection*, 179 Conn. App. 127, 149, 178 A.3d 1043 (2018). Although the parties in their appellate briefs direct us to cases that address the fundamental fairness of actual hearings held by various administrative agencies, no administrative evidentiary hearing was in fact held in the present case. Nevertheless, we review the hearing officer's decision to deny the plaintiff's request for a substantiation hearing to determine whether the action taken was fundamentally fair. See *Altholtz* v. *Dental Commission*, 4 Conn. App. 307, 310, 493 A.2d 917 (1985) ("[j]udicial review of administrative process is intended to assure that the evidence upon which an administrative agency acts is probative and reliable and that the action taken is fundamentally fair"); see also *Unistar Properties, LLC* v. *Conservation & Inland Wetlands Commission*, 293 Conn. 93, 124, 977 A.2d 127 (2009) (administrative proceedings must be conducted so as not to violate fundamental rules of natural justice).

The plaintiff's contention that his right to fundamental fairness was violated is belied by the record. The department regulation puts an individual on notice that he or she will be denied a substantiation hearing when a civil court proceeding that has been finally disposed of makes a factual determination identifying that individual as the person responsible for the neglect at issue. See Regs., Conn. State Agencies § 17a-101k-7 (i). Our review of the record clearly indicates that, through the course of the hearing before the juvenile court on both the order of temporary custody and the neglect petitions regarding his children, the plaintiff was provided the protections that fundamental fairness mandate. First, he was on notice that the factual allegations in support of both the applications for orders of temporary custody and neglect petitions were premised almost exclusively on his conduct. Second, the record clearly demonstrates that the plaintiff was represented by counsel who defended his position at a two day consolidated hearing on the orders of temporary custody and the neglect petitions. Last, the record makes manifest that he testified at the hearing, called witnesses, presented his own evidence, and had his counsel cross-examine other witnesses. See *Grimes* v. *Conservation Commission*, 243

Conn. 266, 274, 703 A.2d 101 (1997) ("[f]undamentals of natural justice require that 'there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary' "). On the basis of the facts of this case, we have little difficulty concluding that the dismissal of the plaintiff's request for a substantiation hearing pursuant to the department regulation was not fundamentally unfair.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] We note that § 22-12-4 of the policy manual was the applicable subsection when this matter was before the department. The department's policy manual has since been changed, and the contents of that subsection transferred, effective January 2, 2019. For the sake of clarity, each reference to § 22-12-4 in this opinion is to the version of the subsection in use while the plaintiff's request for an administrative hearing was before the department.

[2] The language of § 22-12-4 of the policy manual largely mirrored the language of the department regulation from which it was derived. Section 17a-101k-7 of the Regulations of Connecticut State Agencies provides in relevant part: "(i) A request for an administrative hearing shall be denied by the department when a civil court proceeding has been finally disposed with a factual determination by the court that the identified person committed the act of child abuse or neglect that is the subject of the substantiation." Section 22-12-4 of the policy manual provided: "A request for a substantiation hearing shall be denied by the Department when a criminal, civil, probate court or administrative proceeding has resulted in a finding that the perpetrator has committed the act of child abuse or neglect that is the subject of the substantiation."

We note that in the present matter, the parties and the adjudicatory bodies occasionally referred to the department policy manual provision and regulation interchangeably. The trial court, however, made clear that dismissal of the plaintiff's request for a hearing was proper pursuant to both the department regulation and the policy manual provision. Although the plaintiff almost exclusively refers to the policy manual in crafting his arguments on appeal, we are mindful that the language of the regulation controls. See *Amaral Bros., Inc.* v. *Dept. of Labor*, 325 Conn. 72, 85, 155 A.3d 1255 (2017) (regulations issued by administrative agency have same force and effect as statute).

[3] The petitions alleged as grounds for neglect that each child was being denied proper care and attention, physically, educationally, emotionally or morally, and being permitted to live under conditions, circumstances or associations injurious to the well-being of the child or youth. See General Statutes (Rev. to 2015) § 46b-120 (6) (B) and (C).

[4] General Statutes § 46b-129 (b) provides in relevant part: "If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or subsequent thereto, that there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety, the court shall either (A) issue an order to the parents or other person having responsibility for the care of the child or youth to appear at such time as the court may designate to determine whether the court should vest the child's or youth's temporary care and custody in a person related to the child or youth by blood or marriage or in some other person or suitable agency pending disposition of the petition, or (B) issue an order ex parte vesting the child's or youth's temporary care and custody in a person related to the child or youth by blood or marriage or in some other person or suitable agency. A preliminary hearing on any ex parte custody order or order to appear issued by the court shall be held

not later than ten days after the issuance of such order. . . .”

[5] Practice Book § 33a-7 (e) provides in relevant part: “Subject to the requirements of Section 33a-7 (a) (6), upon motion of any party or on its own motion, the judicial authority may consolidate the hearing, on the order of temporary custody or order to appear with the adjudicatory phase of the trial on the underlying petition. At a consolidated order of temporary custody and neglect adjudication hearing, the judicial authority shall determine the outcome of the order of temporary custody based upon whether or not continued removal is necessary to ensure the child’s or youth’s safety, irrespective of its findings on whether there is sufficient evidence to support an adjudication of neglect or uncared for. . . .”

[6] General Statutes § 17a-101g (b) provides the criteria for when the commissioner should substantiate a reported case of child abuse or neglect and whether the offender’s name should be placed on the child abuse and neglect registry. General Statutes (Rev. to 2015) § 17a-101g (b) provides in relevant part: “After an investigation into a report of abuse or neglect has been completed, the commissioner shall determine, based upon a standard of reasonable cause, whether a child has been abused or neglected, as defined in section 46b-120. If the commissioner determines that abuse or neglect has occurred, the commissioner shall also determine whether: (1) There is an identifiable person responsible for such abuse or neglect; and (2) such identifiable person poses a risk to the health, safety or well-being of children and should be recommended by the commissioner for placement on the child abuse and neglect registry established pursuant to section 17a-101k. . . .” See *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 396–97 n.3, 94 A.3d 588 (2014). The commissioner’s determination that an individual is responsible for the abuse or neglect of a child is referred to as a substantiation. See Regs., Conn. State Agencies § 17a-101k-7 (h) and (i).

General Statutes § 17a-101k (b) provides: “Upon the issuance of a recommended finding that an individual is responsible for abuse or neglect of a child pursuant to subsection (b) of section 17a-101g, the commissioner shall provide notice of the finding, by first class mail, not later than five business days after the issuance of such finding, to the individual who is alleged to be responsible for the abuse or neglect. The notice shall: (1) Contain a short and plain description of the finding that the individual is responsible for the abuse or neglect of a child; (2) Inform the individual of the existence of the registry and of the commissioner’s intention to place the individual’s name on the registry unless such individual exercises his or her right to appeal the recommended finding as provided in this section; (3) Inform the individual of the potential adverse consequences of being listed on the registry, including, but not limited to, the potential effect on the individual obtaining or retaining employment, licensure or engaging in activities involving direct contact with children and inform the individual of the individual’s right to administrative procedures as provided in this section to appeal the finding; and (4) Include a written form for the individual to sign and return, indicating if the individual will invoke the appeal procedures provided in this section.”

We note that in the present case, the plaintiff was not recommended for entry on the child abuse and neglect registry.

[7] The defendant’s brief to the hearing officer cited to the regulation and policy manual language and argued that “[w]hile the court need not identify parental fault in order to adjudicate a child as a neglected child, in this case the court did.” The defendant argued that “[t]he [juvenile] court attributed the neglect of the children to the out of control and coercive behaviors of [the plaintiff], including his undermining . . . disregard . . . and . . . uncontrolled anger towards [his wife].” The defendant then went on to address the hearing officer’s request of whether collateral estoppel applied in the case. The defendant concluded her argument by stating: “The findings of the court in the [November 3, 2015] decision are directly on point with respect to the factors required of the [defendant] to substantiate [the plaintiff] as a perpetrator of physical and emotional neglect of the children. [The plaintiff] had the opportunity to fully and fairly litigate the issue, and as such, [he] should be precluded from relitigating the same issue in a second proceeding pursuant to [§] 17a-101k-7 (i) of the [d]epartment’s [a]gency [r]egulations and [§] 22-12-4 of the [d]epartment’s policy.”

In the plaintiff’s brief, he set forth an analysis of why the doctrine of collateral estoppel did not apply in this matter and requested that the hearing officer “find that the doctrine of collateral estoppel does not apply to the issue of whether [he] committed the act of child neglect as that issue is not identical to the issue of whether the children were neglected, was not

actually litigated in the trial court and was not necessarily determined in the trial court."

[8] We note that there is nothing to suggest that the use of the word "equivalent" is anything other than loose language, not intended to mean that the standards are identical. We also note that after the court concluded in its memorandum of decision that the two concepts were not identical, the court took time to explain its earlier decision in *Lang* and distinguished it from the present case. The court indicated that "[o]f course there must be a full hearing with the opportunity for the respondent to testify in the Superior Court proceeding. In this, the policy manual is identical to common-law issue preclusion; this is what the case of *Lang* . . . recognized. Respondent Lang had admitted in [the] Superior Court . . . to [the] criminal charge [of] risk of injury to a child. The [criminal] court took no evidence on the plea, and Lang had merely been canvassed as to his acceptance of the plea. Under either collateral estoppel or the [department] regulation or the [department] policy manual, in *Lang* a substantiation hearing was warranted."

[9] "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Internal quotation marks omitted.) *In re Kyllan V.*, 180 Conn. App. 132, 138, 181 A.3d 606, cert. denied, 328 Conn. 929, 182 A.3d 1192 (2018).

[10] "IICAPS provides home-based treatment to children, youth and families in their homes and communities. Services are provided by a clinical team which includes a Master's-level clinician and a Bachelor's-level mental health counselor. The clinical team is supported by a clinical supervisor and a child & adolescent psychiatrist. IICAPS Services are typically delivered for an average of 6 months. IICAPS staff also provide 24-hour/7-day emergency crisis response." State of Connecticut Department of Children and Families, "Intensive Home Based Services," available at https://portal.ct.gov/DCF/Behavioral-Health-Partnership/Intensive-Home-Based-Services#Intensive_In-Home_Child_and_Adolescent_Psychiatric_Services_(IICAPS) (last visited March 21, 2019).

[11] Only the transcript of the juvenile court's oral decision was included in the record before the hearing officer. On August 1, 2017, the parties agreed during oral argument before the trial court to supplement the record with a full transcript of the proceedings that took place before the juvenile court on October 2 and 19, 2015.

[12] We also note that the plaintiff did not pursue any challenge to the juvenile court's decision sustaining the orders of temporary custody and adjudicating his children neglected.

---